279 N.J. Super. 638 (1995)
653 A.2d 1183
TOWNSHIP OF MARLBORO, PLAINTIFF-RESPONDENT,
v.
PLANNING BOARD OF THE TOWNSHIP OF HOLMDEL, THE TOWNSHIP OF HOLMDEL, MAYOR AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF HOLMDEL, WESTOR PARTNERSHIP, COUNTY OF MONMOUTH, STATE OF NEW JERSEY, AND NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, DEFENDANTS. TOWNSHIP OF COLTS NECK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PLANNING BOARD OF THE TOWNSHIP OF HOLMDEL, TOWNSHIP OF HOLMDEL, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND WESTOR PARTNERSHIP, A NEW JERSEY PARTNERSHIP, DEFENDANTS. GRC DEVELOPMENT CORP., A NEW JERSEY CORPORATION, HMF ASSOCIATES, A NEW JERSEY PARTNERSHIP, RJS REALTY ASSOCIATES, A NEW JERSEY LIMITED PARTNERSHIP AND WESTOR PARTNERSHIP, A NEW JERSEY GENERAL PARTNERSHIP, PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF HOLMDEL, IN THE COUNTY OF MONMOUTH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF HOLMDEL, MAYOR OF THE TOWNSHIP OF HOLMDEL AND CLERK OF THE TOWNSHIP OF HOLMDEL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 24, 1995.
Decided February 24, 1995.
*639 Before Judges PRESSLER, LANDAU and NEWMAN.
John R. Halleran argued the cause for appellant Westor Partnership (Giordano, Halleran & Ciesla, attorneys; Mr. Halleran, of counsel and on the brief).
Thomas F. Carroll, III argued the cause for appellants GRC Development Corp., HMF Associates and RJS Realty Associates (Hill Wallack, attorneys; Mr. Carroll, on the brief).
Jeffrey P. Blumstein argued the cause for respondent Planning Board of the Township of Holmdel (Szaferman, Lakind, Blumstein, Watter & Blader, attorneys; Arnold C. Lakind, of counsel; Messrs. Blumstein and Lakind, on the brief).
Brian J. Molloy argued the cause for respondent Township of Colts Neck (Wilentz, Goldman & Spitzer, attorneys; Mr. Molloy, of counsel and on the brief with Steven J. Tripp and Robert J. Curley). Michael B. Steib also submitted a brief for respondent Township of Colts Neck.
*640 Joseph D. Youssouf argued the cause for respondent Township of Holmdel (Mr. Youssouf, on the brief).
Respondent Township of Marlboro relies upon the brief and appendix submitted by respondent Township of Colts Neck.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This consolidated appeal requires us once again to consider the consequences of illegal exactions obtained by a municipal land use planning agency from a developer during the application approval process. In Nunziato v. Edgewater Planning Bd., 225 N.J. Super. 124, 541 A.2d 1105 (App.Div. 1988), we held that a resolution approving the variance and site plan application of the developer of a high-rise luxury apartment building was vitiated by the board's imposition of the condition, agreed to by the developer, that a substantial financial contribution be made for the town's future affordable housing fund. Relying on Nunziato, the trial judge granted summary judgment invalidating the preliminary site plan approvals granted by the Holmdel Township Planning Board to the two appellant developers here. We conclude that he erred in so doing and consequently reverse and remand for further proceedings.
The Township of Holmdel has several commercial zones which, in recent years, have been the subject of significant development, including major shopping centers, a Bell Laboratories complex, an AT & T complex, a Prudential Insurance Company complex, a hospital medical center, and numerous large office buildings. This controversy involves two separate developers, each of whom propose construction of an office building complex on its respective property. Westor Partnership owns a ninety-two acre tract in the OL-2 (office) zone abutting County Route 520. GRC Development Corp. is acting for RJS Realty Associates and HMF Associates (collectively GRC), which together own a total of two hundred and eleven acres in the OL-3 zones straddling State Highway 34. Although the site plan applications of the two developers remained at all times entirely separate, they were dealt with by the Planning *641 Board, both substantively and procedurally, in a parallel manner, particularly in respect of off-site improvements.
Ultimately the Planning Board, following public hearings, granted preliminary site plan approval to both applicants. Westor's project, denominated Holmdel Corporate Office Center, proposed a three-building office complex containing about 379,000 square feet and requiring neither use nor bulk variances but only two relatively minor design standard waivers. GRC's project proposed a six-building office complex containing about 902,000 square feet. That project required one relatively minor zoning variance, namely provision of 3,570 parking spaces rather than the 3,604 spaces required by the ordinance. It also required several minor design standard waivers.
The issue before us involves the cash contribution for off-site improvements required by the Planning Board as a condition of its approval for each of the projects. Westor was required to make a cash contribution of $1,140,000, of which $200,000 was allocated to the cost of a fire truck and $50,000 as seed money for a recreation center. The balance was allocated in specific amounts to specific street and road improvements. GRC was required to make a cash contribution of $3,800,000, of which $100,000 was allocated to the fire truck and $100,000 as seed money for the recreation center. In addition GRC was required to transfer to the municipality title to a parcel of land, between three and four acres in size, valued at $300,000, for construction of a new firehouse. That $300,000 was calculated as part of the total $3.8 million dollars. The balance was allocated in specific amounts to specific street improvements.
The Planning Board approved the two projects in the fall of 1991. The developers accordingly each submitted the required developer's agreement to the Township Committee for execution. Before the Committee acted, however, the general election of November 1991 was held. The election changed the composition of the governing body, resulting in a majority now opposed to the continuation of large-scale development in the township. Although the newly-elected members were not yet seated at the *642 December 1991 Township Committee meeting at which the developers' agreements were to be voted on, one member of the Committee had resigned. The agreements were rejected by a tie vote.
Three law suits, thereafter consolidated, ensued. The developers, in a joint action, sued the Township because of its failure, alleged to be arbitrary, unreasonable and unlawful, to execute the developers' agreements. Two neighboring municipalities, Colts Neck and Marlboro, both of which opposed further development in Holmdel, sued Holmdel, its planning board, and the developers, among others, seeking invalidation of the site plan approvals and of the offending portions of the Holmdel zoning ordinance. Among their various claims of invalidity was the assertion that the fire truck, fire house, and recreation center contributions were illegal exactions in violation of N.J.S.A. 40:55D-42 rendering the approvals null and void under Nunziato.
After issue was joined, Colts Neck and Marlboro moved for summary judgment on the illegal-exaction issue. In order to determine the facts pertinent to that issue, the trial judge directed an evidentiary hearing, following which he held that since the fire house, fire truck and recreation center contributions were not authorized by that statute, they had indeed been illegally exacted. He therefore concluded for that reason alone that the approvals had to be set aside. Hence the judge did not consider any other of the multiple challenges to the approvals and to the zoning ordinance made by the two neighboring towns. Nor did he address the developers' affirmative claims against Holmdel. The developers each appealed from the ensuing summary judgment in favor of Colts Neck and Marlboro and from the subsequent order denying the motion to alter or amend the judgment.
As we held in Nunziato, the municipal authority to condition development approvals on the developer's agreement to provide or contribute to off-site improvements is limited by N.J.S.A. 40:55D-42, which permits such contributions only with respect to street improvements and water, sewerage and drainage facilities, and *643 only to the extent necessitated by the reasonably anticipated impact of the development on those facilities. See also N.J. Bldrs. Ass'n. v. Bernards Tp., 108 N.J. 223, 233, 528 A.2d 555 (1987); Longridge Builders, Inc. v. Planning Bd. of Princeton Tp., 52 N.J. 348, 350-351, 245 A.2d 336 (1968); West Park Ave., Inc. v. Ocean Tp., 48 N.J. 122, 224 A.2d 1 (1966); Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423, 441, 147 A.2d 28 (1958); F & W Associates v. County of Somerset, 276 N.J. Super. 519, 648 A.2d 482 (App.Div. 1994). Plainly, contributions for recreational facilities and for fire-fighting facilities, even those necessary for proper servicing of the development itself, are beyond the authorization of the statute, and hence a development application may not be conditioned on the developer's undertaking to provide them. But the mere fact that such a condition was imposed does not, in our view, necessarily and inevitably render the ensuing approval void. Nor do we read Nunziato as compelling that result. We are convinced that the undisputed facts here sufficiently distinguish this case from Nunziato so as to warrant a quite different remedy.
In sum, we view the critical issue as whether the illegal exaction constitutes a blatant quid pro quo for the approval, either demanded by the municipality and acceded to by the developer or offered by the developer and accepted by the municipality in circumstances in which the exaction is unrelated to any legitimate land use concerns generated by the development application itself and the amount thereof is entirely arbitrary. If that is so, then the transaction may be fairly regarded as an interdicted sale of a municipal approval, subversive of law, anathematic to public policy, and remedial only by vitiation of the approval. That was the case in Nunziato. It is not, however, the case here. Here there is no question that the parties acted in good faith in respect of the fire service and recreational contributions, that those contributions were incidental to and a relatively minor factor in an overall package of legally required contributions, and, perhaps most significantly, that the contributions were viewed by both parties as *644 justifiable because they were intended to be used by the municipality to address anticipated municipal problems attributable to the proposed development. Moreover, the amount of the contributions was reasonably related both to the costs expected to be incurred and the developer's respective fair share thereof.
Our conclusion is easily explained by comparing the manner in which the illegal exaction was obtained in Nunziato  a process which bore all the hallmarks of a public auction intended to obtain the highest possible bid  with the process that resulted in the contributions package here. According to this record, the Board's practice in respect of all the Township's major developments was to determine what off-site improvements were reasonably required to offset the impact of the project on public streets, traffic safety and drainage, to calculate the cost of these improvements, and to assess each developer a fair pro-rata share thereof, all in precise accordance with N.J.S.A. 40:55D-42. And see F & W Associates v. County of Somerset, supra. In the case of these two applications and because other large developments were also being proposed by others, the Board commissioned a regional traffic and drainage study to determine the scope of improvements that would be required in the southern portion of the Township to accommodate these projects. This study, undertaken during the pendency of Westor's and GRC's applications and considered at extensive Planning Board hearings, was intended to be "used as a data and information base in consideration" of these two developments "as well as other future projects that may go forward in the OL Zone." When the study was completed, the question of off-site improvement contribution for both applications was referred to the Planning Board's off-tract improvement subcommittee for apportionment among the developers of a fair share of the costs of the improvements identified by the study.
It appears that this subcommittee had functioned on a regular basis since the early 1980's when large-scale commercial construction in Holmdel apparently began. As explained by the Board's consulting engineer, who served as a member of the subcommittee, *645 its role "was to evaluate the off-site impacts concerning development projects and then develop a fair share off-site assessment that was presented to the planning board for approval." As the engineer also explained, the subcommittee reviewed a project for these purposes "toward the end of the approval process, when the board has a clear understanding of what the final configuration of the project will be." In its review of the Westor and GRC projects, the subcommittee was primarily concerned, within the framework of the study, with their probable impact on roads and traffic safety, and it was clearly the need for and cost of the identified road improvements which claimed its basic attention.
Following its meetings with each of the developers, the subcommittee sent the Planning Board a letter summarizing the agreements reached with each of them on the basis of the traffic study. The Westor letter reported in substantial detail on the six street improvements required by that development, including the nature of the project's impact on each location as well as the nature of the improvement proposed to accommodate the anticipated problem. The dollar amount of Westor's contribution to each improvement was also reported. These amounts totaled $890,000. A seventh item read as follows:

Community Services  The applicant is to contribute to both the fire service and recreation facilities in the community. A contribution of $200,000 is to be provided for a fire truck to service the facility. Also, a contribution of $50,000 is to be provided for a recreation center.
The GRC letter reported in similar fashion on ten street and highway locations requiring improvement as a result of that project, assessing a fair share contribution for each aggregating $3,300,000. An eleventh item required, prior to final approval, submission by GRC of a traffic management plan "including staggered hours, flex time and all other methods to reduce peak hour traffic." Finally, a twelfth item read as follows:

Community Services  It is recognized that GRC has an impact on the services within the community. Therefore, GRC has agreed to contribute a parcel of land for construction of a new firehouse and related facilities, and contribute $100,000 toward a new fire truck. The parcel is to be approximately 3-4 acres in size. GRC will work with the Township for sizing and location of the parcel. Contribution to *646 the fire truck is to be made prior to the certificate of occupancy of Building 1. The land is to be donated prior to the certificate of occupancy for Building 2. Also, GRC will contribute $100,000 toward the Township recreation facilities. This fund is to be provided prior to the certificate of occupancy of the second building.
Although the contribution for fire fighting was illegal because not expressly permitted by N.J.S.A. 40:55D-42, nevertheless it was not arbitrary in that it bore a reasonable relationship to municipal burdens created by the development. The municipality was concerned because GRC's project required a road widening that in turn would require relocation of the fire house. Since GRC's activity was the cause of the need to relocate, it agreed to accept a portion of the financial burden of the relocation by conveying a tract of land it did not need to the municipality for that purpose. With respect to the fire truck, the municipality was concerned, as were the developers, because both projects proposed four-story buildings. The present fire-fighting equipment did not have the capacity to reach beyond the third floor even though a four-story height was permitted by the zoning ordinance. Only one other complex had a four-story building, and that developer provided its own fire-fighting capacity. Again, the requirement of a new fire truck with the capacity to reach the height of the proposed buildings was directly attributable to the proposed development and the amount of the contributions was reasonably related to the anticipated cost of dealing with the problem and was, moreover, attempted to be assessed on a reasonable, fair-share basis.
The justifiability and direct nexus of the recreation center contributions are somewhat less apparent. According to the record, several of the existing large complexes, although not required to do so by ordinance, provided on-site recreational facilities for employees. The subcommittee's position was that such on-site facilities conserved local recreational facilities for residents. Since neither of these developments proposed such on-site facilities, the subcommittee believed it would be fair, in the local interest, to have the developers contribute to a planned municipal recreation center. As it turned out, however, in the *647 1991 general election, a referendum calling for construction of new municipal recreational facilities was defeated. Consequently the Township attorney, who had already had reservations regarding the propriety of the contribution, opined that since there would be no center built to which the contributions could be made, they were clearly illegal. The recreation center contributions were, therefore, deleted from the developers' agreements before the Township Committee in December 1991. We need not be further detained by that category of contribution.
The careful deliberative process by which the package of contributions was arrived at for these developers bespeaks, in our view, a responsible municipal approach to the land-use planning function. The Board and its subcommittee simply erred as a matter of law as to their right to request contributions for fire-fighting services along with the contributions for the other off-site improvements they did have a right to demand. Nevertheless, although they acted without legal authority, their action, in itself, was reasonable and in no way arbitrary. We can see, therefore, no justification for voiding the approvals which included the illegal demand rather than merely deleting the demand for the contribution, the remedy sanctioned by the Court in Longridge Builders, Inc. v. Planning Bd. of Princeton Tp. and West Park Ave., Inc. v. Ocean Tp., supra.
The respondents on this appeal argue that mere deletion of the illegal contributions is an inappropriate remedy because if the Board had known it could not impose that condition, it would have sought greater contributions for the street improvements.[1] We reject the argument. There is nothing in the record to suggest that the fair-share assessments made for the required street improvements were not appropriate, and clearly, an exaction beyond a fair share would itself have been illegal. Beyond that, we point out that several years were consumed by the application *648 process as well as considerable financial resources of the developers. We do not intend to suggest that the mere expenditure of time and money entitles a developer to a remedy he otherwise has no right to obtain. On the other hand, we cannot afford arbitrary profligacy of the capital resources of those who seek municipal approvals in good faith. Developers have the right to be fairly dealt with. See, e.g., Urban Farms, Inc. v. Franklin Lakes, 179 N.J. Super. 203, 431 A.2d 163 (App.Div.), certif. denied, 87 N.J. 428, 434 A.2d 1099 (1981). Government has the obligation to "turn square corners" in dealing with the public. F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426, 495 A.2d 1313 (1985). We are convinced that fair dealing requires the deletion of the illegal exaction here, leaving the approvals otherwise intact.
As we have noted, the issue of the illegal exactions was only one of many raised by these respondents in challenging the approvals. None of the others have yet been addressed, nor have the developers' affirmative claims yet been addressed. Although we reverse the summary judgment nullifying the approvals, it is nevertheless plain that the balance of the issues must now be adjudicated, but without regard to the contribution issue.
The judgment appealed from is reversed and the matter is remanded for further proceedings consistent herewith.
NOTES
[1] We do note that testimony indicating that when the recreational center contribution was deleted, the developers agreed to devote the assessed sums to street improvements, but the record does not make clear how this came about.