286 N.J. Super. 311 (1996)
669 A.2d 260
EAST/WEST VENTURE, A NEW YORK PARTNERSHIP, PLAINTIFF-RESPONDENT,
v.
BOROUGH OF FORT LEE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, LOCATED IN BERGEN COUNTY, NEW JERSEY, THE MAYOR AND COUNCIL OF THE BOROUGH OF FORT LEE, THE PLANNING BOARD OF THE BOROUGH OF FORT LEE, DEFENDANTS-RESPONDENTS, AND THE BOROUGH OF EDGEWATER, INTERVENOR-APPELLANT, AND RIVER RIDGE CONDOMINIUM ASSOCIATION, INC., INTERVENOR. EDWARD BOJEKIAN AND FLORENCE BOJEKIAN, PLAINTIFFS-APPELLANTS,
v.
FORT LEE PLANNING BOARD, MAYOR AND COUNCIL OF THE BOROUGH OF FORT LEE, EAST/WEST VENTURE, A PARTNERSHIP OF THE STATE OF NEW YORK; THE COUNTY OF BERGEN AND RIVER RIDGE CONDOMINIUM ASSOCIATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1995.
Decided January 5, 1996.
*318 Before Judges HAVEY, D'ANNUNZIO & CONLEY.
Robert T. Regan argued the cause for intervenor-appellant Borough of Edgewater (Mr. Regan on the brief).
Frederick L. Bernstein argued the cause for appellants Edward and Florence Bojekian (Frederick L. Bernstein, P.A., attorney; Mr. Bernstein, on the brief).
Henry A. Hill argued the cause for respondent East/West Venture (Hill Wallack, attorneys; Stephen Eisdorfer, on the brief).
Frederic S. Kessler argued the cause for respondents Borough of Fort Lee and Mayor and Council of the Borough of Fort Lee (Tompkins, McGuire & Wachenfeld, attorneys; Mr. Kessler, of counsel and on the brief).
No briefs were filed by the remaining respondents.
*319 The opinion of the court was delivered by HAVEY, P.J.A.D.
In this Mount Laurel[1] builder's remedy litigation, the trial judge, after a "fairness" hearing, approved a settlement agreement between plaintiff East/West Venture (East/West) and defendants Borough of Fort Lee, its Planning Board and the County of Bergen. The agreement represents a substantial component of Fort Lee's compliance plan, designed to meet the Borough's constitutionally imposed fair share obligation to provide 140 low- and moderate-income housing units.
Intervenor Edgewater Borough argues that: (1) the settlement agreement constitutes "contract zoning"; (2) the settlement does not provide sufficient Mount Laurel units to satisfy the minimum standards set by Mount Laurel II; (3) several provisions of the agreement are ultra vires since they conflict with the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -136; and (4) the agreement violates sound planning concepts and the purposes of zoning set forth under the MLUL. Defendants Edward and Florence Bojekian, join in Edgewater's contentions, but also argue that the trial judge erred in treating them as objectors to the settlement agreement rather than deciding their prerogative writs action separately. They also claim that the agreement is invalid because East/West's proposed market-rate complex will be constructed on a lot that has never been legally subdivided.[2] Except as modified, we affirm.
*320 In 1988, East/West filed an action in lieu of prerogative writs alleging that Fort Lee's zoning regulations violated the Mount Laurel doctrine. East/West sought a builder's remedy for the construction of 1,012 high-rise units with a twenty-percent set-aside for Mount Laurel units. After Edgewater's motion to intervene was granted, Judge Skillman in the Law Division, on April 3, 1989, declared Fort Lee's land-use ordinances unconstitutional under Mount Laurel II, and, on April 17, 1989, appointed Philip B. Caton as master. The matter was transferred to Bergen County for trial.
East/West, Fort Lee, Fort Lee's Planning Board and Bergen County entered into a written settlement on March 21, 1994, which was announced at a joint meeting of the Borough's governing body and Planning Board. On April 25, 1994, the Bojekians then filed their prerogative writs action challenging the settlement agreement which was consolidated with East/West's case.
The agreement has three key components: (1) it allows East/West to construct a thirty-story, 538-unit condominium complex on a 4.88 acre tract of land; (2) East/West will construct a sixty-unit affordable housing development; and (3) East/West will contribute $800,000 to Fort Lee's Housing Trust Fund to assist the Borough in meeting its fair share obligation. Also, East/West agrees to commence construction of the affordable housing development not later than twenty-one months after a designated "start date" and to complete construction within fifteen months.
The settlement agreement also calls for the submission of the Housing Element of the master plan to the Law Division for approval, after which the Planning Board would, within thirty days, amend it to make it consistent with the agreement. Also, within thirty days, the Borough would amend the ordinance in the *321 manner specified by the settlement. All parties agree to submit any disputes to the master for mediation, and agree that the trial judge shall retain jurisdiction until certificates of occupancy have been issued for both the affordable housing and high-rise units. Finally, Fort Lee and its Planning Board agree, "in consideration of East/West's undertaking to build the affordable housing project in advance of the market rate development," to grant "East/West extended vesting on the market rate project site plan approval for 10 years."
On May 9, 1994, pursuant to the direction of the trial judge, Fort Lee published a notice of hearing to be conducted by the trial judge on June 15, 1994, to consider entry of a partial judgment approving the settlement agreement. Notice was also served by mail upon all property owners and adjoining municipalities within 200 feet of the subject sites. The notice described East/West's proposals and stated that the full text of the agreement, the proposed ordinance revisions necessary to implement it, and a map of the sites were available to be inspected at the Borough Clerk's office. It also provided that any interested party may file objections to the proposed agreement and may appear at the hearing scheduled by the trial judge to present evidence in support of any objections to the agreement.
Several objectors, including Edgewater and the Bojekians appeared at the five-day hearing. Witnesses testifying in favor of the settlement included planners presented by Fort Lee and East/West, as well as Caton, the court-appointed master. Edgewater elicited the testimony of a planner opposing the application. The Bojekians objected to the procedure which, they argued, would place the trial judge's "imprimatur" on amendments to Fort Lee's master plan and zoning ordinance without the Borough first complying with the notice and hearing requirements under the MLUL.
According to the testimony elicited during the hearing, the market-rate units will be on a site which is bordered to the south by a low-rise residential area in Edgewater (developed at a *322 density of between five and twenty-five dwelling units per acre) and to the north by a neighborhood of predominantly one- and two-family homes. East/West's market-rate proposal provides for a density of 110 units per acre. The site is presently zoned C-6, permitting commercial uses, including hotels, and structures up to thirty stories high. However, the present zoning is inconsistent with the 1988 master plan, which recommends rezoning to a residential use at a considerably lower density and height. The site is presently improved with an unfinished twelve-story concrete parking garage constructed in 1974 as part of a previous plan approving four thirty-story apartment buildings, two of which have been completed, Century Tower and River Ridge. In 1977, a developer obtained a use variance and site plan approval for a 650-room hotel on the subject site and in 1982, another developer obtained approval for a mixed use project including an eighteen-story hotel and 127 residential units.
The sixty affordable housing units proposed by the settlement will be constructed on the Kaufer Lane site, consisting of 1.41 acres, located approximately one block north of the high-rise site. The agreement contemplates closing a portion of Kaufer Lane and extending Federspiel Street to provide additional access to the affordable units. The density of fifty units per acre is consistent with the standards of Fort Lee's present master plan.
The expert testimony adduced during the hearing generally focused on two issues: (1) whether the proposals were consistent with sound planning and the purposes of zoning under the MLUL, N.J.S.A. 40:55D-2; and (2) whether the settlement agreement provided sufficient affordable housing units. As to the first issue, the planning experts for East/West and Fort Lee, as well as Master Caton, testified that East/West's proposed thirty-story tower constituted sound planning because it was compatible with the existing thirty-story tower complexes adjoining the site. East/West's expert also reasoned that current zoning would permit a thirty-story hotel structure on the site, a use which would be at least as intensive as East/West's high-rise proposal. Fort Lee's *323 expert further noted that the proposed tower would not exceed the height of the two adjacent condominium towers. Edgewater's planning consultant disagreed, stating that the size and bulk of the tower, with its overall intensity of use, was incompatible with the adjacent low-rise and low-density residential uses in Edgewater.
As to the second issue, there was competing expert testimony as to whether the agreement should be rejected because: (1) the sixty units proposed by East/West fell below the twenty-percent minimum suggested by Mount Laurel II; and (2) construction of the market-rate and affordable units on different sites violated the spirit of Mount Laurel.
In a written opinion, the trial judge approved the settlement agreement. Citing extensively from the Law Division decision in Morris County Fair Housing Council v. Boonton Tp., 197 N.J. Super. 359, 484 A.2d 1302 (Law Div. 1984), aff'd o.b., 209 N.J. Super. 108, 506 A.2d 1284 (App.Div. 1986), the judge stated that "all interested parties were given ample notice of the compliance hearing and ... all the objectors who appeared were clearly informed and participated fully." He adopted the testimony of Master Caton, finding it to be "credible and complete," and determined that the agreement "represents sound land use planning and is in compliance with COAH regulations." The judge also concluded that the settlement, including the provision for sixty affordable units and the $800,000 contribution to the municipality, constituted a fair and reasonable partial settlement of Fort Lee's compliance obligation, "designed to assist the Borough to meet its constitutional obligation."
The judge entered an order which was deemed a "final judgment with respect to all issues covered by the Settlement Agreement." However, as stated, the settlement only partially satisfied Fort Lee's Mount Laurel obligation of 140 units and, pursuant to the settlement, the order requires Fort Lee to submit its entire compliance package to the court and master within six months.

*324 I
Edgewater and the Bojekians first argue that the settlement agreement approved by the trial judge constitutes unlawful "contract" zoning. They assert that Fort Lee placed the "cart before the horse" by entering into an agreement to amend its master plan and zoning ordinance in order to implement the agreement before the requisite statutory procedures necessary to adopt the amendments were followed.
Edgewater and the Bojekians correctly point out that the settlement agreement binds Fort Lee to amend its master plan and zoning ordinance to implement the settlement terms within a specified period after approval by the court.
Because zoning is inherently an exercise of the State's police power, "municipalities have no power to zone except as delegated to them by the Legislature." Taxpayers Ass'n v. Weymouth Tp., 80 N.J. 6, 20, 364 A.2d 1016 (1976), appeal dismissed and cert. denied, 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977); see also Riggs v. Township of Long Beach, 109 N.J. 601, 610, 538 A.2d 808 (1988). The governing body of a municipality cannot delegate its zoning powers to others: it has the "ultimate responsibility to establish, by the adoption of its zoning ordinances and amendments thereto, the essential land use character of the municipality." Township of Dover v. Board of Adjust. of Dover, 158 N.J. Super. 401, 411, 386 A.2d 421 (App.Div. 1978). That responsibility must be carried out "in accordance with statutory and municipal procedural requirements." Riggs, supra, 109 N.J. at 612, 538 A.2d 808. A municipality has no power to circumvent these statutory and municipal procedural safeguards by contract with a private property owner. Warner Co. v. Sutton, 274 N.J. Super. 464, 471, 644 A.2d 656 (App.Div. 1994); Suski v. Mayor & Comm'rs of Beach Haven, 132 N.J. Super. 158, 164, 333 A.2d 25 (App.Div. 1975).
In Warner, we held that a consent order settling land-use litigation involving a substantial amendment to the municipality's *325 zoning ordinance constituted unlawful contract zoning. Warner, supra, 274 N.J. Super. at 479-80, 644 A.2d 656. There, no judicial procedure of any sort, by way of a "fairness" hearing or otherwise, was conducted before entry of the consent order. Id. at 479, 644 A.2d 656. We rejected the developer-plaintiff's invitation to remand for such a hearing, first because there was "presently no court rule or other Supreme Court guidance as to the parameters of such a fairness hearing."[3]Id. at 480, 644 A.2d 656. Second, at least where the judge was called upon to approve a wholesale rezoning of the municipality, he or she "must assume the role of `an ad hoc super zoning legislature,' a role not well suited to the judiciary." Id. at 482, 644 A.2d 656 (quoting Pascack Ass'n v. Mayor & Council of Washington Tp., 74 N.J. 470, 487-88, 379 A.2d 6 (1977)).
We concluded in Warner that the judge should, in such a case: (1) "make a threshold finding as to whether any of the settlement terms ... are illegal or void as against public policy," invalidating those that are; (2) "remand to the governing body, retaining jurisdiction, for amendment" of the zoning ordinance to implement the terms of the settlement; and (3) if the ordinance is adopted and challenged by members of the public, then "decide whether the ordinance is sustainable as a valid exercise of the Township's zoning power." Id. at 483-84, 644 A.2d 656. Such a procedure allays the fear that the municipal governing body, presumably protecting the public at large, "may be bargaining away its legislative duties without public scrutiny or political accountability." Id. at 473, 644 A.2d 656. It also provides the public at large with a realistic opportunity to express its collective view at convenient *326 and familiar forums, hearings before its own municipal Planning Board and governing body.
Fort Lee and East/West argue that the concerns expressed in Warner and other cases concerning "contract" zoning have been met here, since a "fairness" hearing was conducted by the trial judge after notice was published and served upon all interested parties. They correctly point out that such a procedure was approved in the context of Mount Laurel litigation in Morris County, supra, 197 N.J. Super. at 366-67, 484 A.2d 1302. Fort Lee and East/West take the firm position that, since the order appealed from here resolves not only the affordable housing and fair share issues, but also the issues concerning the soundness of the proposed master plan amendment and zoning ordinance, the master plan amendment and ordinance (upon enactment) are not subject to substantive challenge by any person, whether or not that person appeared at the fairness hearing.
In Morris County, the Public Advocate, a developer and a municipality settled a Mount Laurel builder's remedy action. Id. at 367, 484 A.2d 1302. Analogizing the case to a class action, Judge Skillman in the Law Division held that Mount Laurel litigation could be settled, but only after a finding by the court that the settlement had apparent merit: (2) notice to all members of the class and others who may have an interest in the settlement was given; (3) a court hearing was conducted where those affected had sufficient time to prepare; and (4) the court concludes, based upon adequate findings of fact, that the settlement was "fair and reasonable" to the members of the protected class. Id. at 369, 484 A.2d 1302.
The procedures outlined in Morris County were designed to ensure that the settlement adequately protects the interests of the lower-income people on whose behalf the suit was brought. "The hearing on the proposed settlement is not a plenary trial[.]" Id. at 370, 484 A.2d 1302. Rather, the court should determine, "based upon the relative strengths and weaknesses of the parties' positions, whether the settlement is `fair and reasonable,' that is, *327 whether it adequately protects the interests of the persons on whose behalf the action was brought." Ibid. (citing Armstrong v. Board of School Directors, 616 F.2d 305, 314-15 (7th Cir.1980)).
The hearing described in Morris County necessarily focuses on whether the components of the settlement protect lower-income persons by satisfying, in whole or in part, the municipality's constitutional obligation to provide affordable housing. Nothing in Morris County suggests that the "fairness" hearing procedure is intended to adjudicate in advance the validity of proposed amendments to the master plan or zoning ordinance necessary to implement the settlement. Nothing said in the opinion forecloses an interested party from instituting a prerogative writs action challenging an amendment to the master plan or zoning ordinance based on the well-established criteria for testing the validity of a land-use ordinance.[4]
Although factually distinguishable, Alexander's Dep't Stores v. Paramus Borough, 243 N.J. Super. 157, 578 A.2d 1241 (App.Div. 1990), aff'd, 125 N.J. 100, 592 A.2d 1168 (1991), is instructive on this point. There, we held that substantive certification granted by the Council on Affordable Housing (COAH) under the Fair Housing Act, N.J.S.A. 52:27D-301 to -329, did not foreclose a plaintiff (who did not participate in the agency action) from filing a Law Division action claiming that: (1) the municipality had "illegally" sold zoning concessions; (2) it had unlawfully bound itself to amend its zoning ordinance; and (3) the proposed zoning ordinance permitting the Mount Laurel housing constituted "spot zoning." Id. at 165-66, 578 A.2d 1241. We concluded that such challenges are traditionally made by an action in lieu of prerogative *328 writs, and "did not ripen until after COAH granted substantive certification, when the governing body took action on the zoning amendments." Id. at 166, 578 A.2d 1241. The same is true here. Any procedural or substantive challenges to the proposed master plan and zoning amendments had not "ripen[ed]" at the time the partial judgment approving the settlement was entered.
We conclude that a trial judge may approve a settlement of Mount Laurel litigation after a "fairness" hearing to the extent the judge is satisfied that the settlement adequately protects the interests of lower-income persons on whose behalf the affordable units proposed by the settlement are to be built. That analysis involves a consideration of the number of affordable housing units being constructed, the methodology by which the number of affordable units has been derived, any other contribution being made by the developer to the municipality in lieu of affordable units, other components of the agreement which contribute to the municipality's satisfaction of its constitutional obligation, and any other factors which may be relevant to the "fairness" issue. See Morris County, supra, 197 N.J. Super. at 371-73, 484 A.2d 1302. Approval, of course, is conditioned upon compliance with the procedural safeguards defined in Morris County. Id. at 372, 484 A.2d 1302.
However, absent an amendment to R. 4:69 to the contrary, see supra, n. 3, the judge should not adjudicate the zoning and planning issues implicated by the agreement. Upon a finding that the agreement is "fair," the judge, without entering judgment, should first determine whether any of the provisions of the settlement are ultra vires or otherwise invalid. He or she should then remand for appropriate amendments to the master plan and zoning ordinance necessary to implement the agreement. This procedure will assure compliance with pertinent statutory safeguards. See e.g., N.J.S.A. 40:49-2; N.J.S.A. 40:49-2.1; N.J.S.A. 40:55D-13 to -16; N.J.S.A. 40:55D-26, -28 and -62.
*329 If the municipal action is challenged in a separate prerogative writs action, the judge should consolidate that action with the pending proceeding and hear and decide the challenge prior to entry of a final judgment of compliance. The judge must decide whether passage of the master plan amendment and ordinance, aside from the affordable housing issues raised in the prior fairness hearing, constitutes a valid exercise of the township's zoning power and is otherwise procedurally and constitutionally valid. See Riggs supra, 109 N.J. at 611-12, 538 A.2d 808. Of course, at that point, the ordinance will enjoy a presumption of validity. Id. at 610-11, 538 A.2d 808. If the municipal action is sustainable, a final judgment of compliance should be entered. Thus, resolution of all issues relevant to the settlement and to the municipality's fair share obligation will be resolved in a single proceeding.
This procedure is, in our view, consistent with the directive of our Supreme Court in Mount Laurel II. There, the Court made clear that the remedies authorized by its opinion were intended to achieve compliance with the constitutional mandate "without interminable trials and appeals." Mount Laurel II, supra, 92 N.J. at 290, 456 A.2d 390. For example, municipalities are no longer able to appeal a trial court's invalidation of the ordinance and thereafter appeal the court-imposed remedy. Ibid. The Court intended an all-inclusive remedy "to conclude in one proceeding, with a single appeal, all questions involved"; that is, entry of "a judgment of compliance ... signifying the trial court's conclusions that there are land use regulations and affirmative devices in place conforming to the constitutional obligation...." Ibid. (emphasis added). When the trial judge here entered an order approving the settlement agreement, the amended master plan and ordinance were not yet "in place."
We recognize that the questions of sound planning and the "fairness" of providing affordable housing are overlapping concepts. There is no doubt that any fair share proposal raises substantive zoning and planning concerns for the municipality. *330 Imposition of the constitutionally-mandated obligation to provide affordable housing "does not require bad planning." Id. at 238, 456 A.2d 390. The specific location of "decent housing for lower income groups" continues "to depend on sound municipal land use planning considerations in this State." Id. at 211, 456 A.2d 390.
Moreover, the Fair Housing Act directs COAH to carry out its statutory duties "in accordance with sound regional planning." N.J.S.A. 52:27D-304a. COAH regulations provide that sites for low- and moderate-income units should be "suitable," N.J.A.C. 5:92-9.1(a); that is, "a site ... adjacent to compatible land uses." N.J.A.C. 5:92-1.3. See also In re Township of Denville, 247 N.J. Super. 186, 200, 588 A.2d 1248 (App.Div. 1991), certif. denied, 127 N.J. 557, 606 A.2d 369 (1992), rev'd on other grounds, 132 N.J. 1, 622 A.2d 1257 (1993).
But the soundness of the planning of Mount Laurel housing and the "suitability" of the site implicate the exercise of the municipality's legislative powers in amending its master plan and zoning ordinance, as well as all of the statutory notice and public hearing safeguards provided to the public under the MLUL and other pertinent provisions of Title 40. Nothing in Mount Laurel II or other controlling case law allows shortcutting those legislative safeguards.
We hold that any person or entity who did or did not attend the "fairness" hearing, with the exception of Edgewater, is not bound by the trial judge's determination that the proposed master plan amendment and ordinance were valid from a zoning and planning perspective. We so hold first because, as stated, the jurisdictional reach of the hearing should have been limited to consideration of whether the settlement was fair to the persons who will be accommodated by the Mount Laurel housing.
Second, the published notice of the hearing was ambiguous as to the consequences of any order approving the proposed settlement entered after the hearing. After giving the time, place and purpose of the hearing, the notice states:

*331 The Borough of Fort Lee has also determined to submit proposed revisions to its Zoning Ordinance relating to the plaintiff's property and certain neighboring areas which will address the Borough's obligation to provide realistic opportunities for low and moderate income housing. If the ordinance provisions are approved by the Court, the Borough will be entitled to a Judgment of Compliance upon their adoption with respect to the sites which are the subject of the rezoning. The parties will request that the Judgment be deemed final for purposes of appeal.
In our view, a reader of this notice would not know that an adjudication approving the settlement agreement would foreclose a subsequent prerogative writs action challenging the ordinance provisions on substantive grounds.
Third, except for Edgewater, none of the objectors who appeared at the court hearing was permitted to cross-examine the experts produced by East/West and Fort Lee. Further, many of the objectors expressed confusion concerning the parameters of the hearing. Others objected to the proceeding because they had insufficient time to retain an expert planner, and, as stated, others complained that the entire proceeding was shortcircuiting the procedural safeguards provided under the MLUL. Indeed, when one objector expressed a concern about the legal effect of vacating part of Kaufer Lane, the judge stated:
Depending on the outcome of this case  two possible outcomes. I approve the plan or I disapprove the compliance package in the settlement. Assume I approve the settlement  this entire package then goes back to the Planning Board for the whole question of site suitability. I'm not passing on site suitability at all. That all goes back to the Planning Board for a full and comprehensive hearing. Full and comprehensive hearing.
So much of your argument, should the plan be approved  depending on what the Planning Board does and the Municipality does  those are the places [the planning board and governing body], I would suggest, that a lot of that argument is going to have to be made. I'll let you make the record today so you're prepared on the record and your record is complete, but depending on the outcome, there will be other  other proceedings before various and sundry boards not having anything to do with this Court, unless some nonprevailing party there decides to take the matter back to the Court.
[Emphasis added.]
In our view, these comments would render fair doubt in the minds of reasonable objectors concerning the scope and purpose of the hearing and the consequences of a judgment approving the settlement. It would therefore be fundamentally unfair to preclude the *332 objectors from challenging subsequent amendments to the master plan and zoning ordinance on procedural and substantive grounds.
Edgewater's participation in the hearing, however, is another matter. Edgewater has been in this case since 1989, when it was granted leave to intervene, and has never challenged the scope of the hearing conducted by the trial judge. To the contrary, from the outset it endorsed the procedure followed by the judge and proceeded on the premise that all issues would be adjudicated. Not only was Edgewater permitted to vigorously cross-examine the parties' experts and Caton on all issues, but it also produced an expert who testified that the proposal was incompatible with sound planning concepts and the purposes of the MLUL. See N.J.S.A. 40:55D-2d (development in one municipality should not conflict with development and general welfare of neighboring municipalities); N.J.S.A. 40:55D-28d (municipality's master plan should consider master plans of contiguous municipalities).
Accordingly, since the substantive zoning and planning issues were "fully and fairly" litigated during the fairness hearing between Edgewater and the parties to the settlement, Edgewater should be collaterally estopped from relitigating those issues in any subsequent challenge to the amendment to the master plan and the zoning ordinance Fort Lee adopts.[5]See N.M. v. J.G., 255 N.J. Super. 423, 431, 605 A.2d 709 (App.Div. 1992). Collateral estoppel applies since, at least from the viewpoint of the trial judge, Edgewater, East/West and Fort Lee, adjudication of the zoning and planning issues was necessary to support the judgment declaring the settlement fair. In re Estate of Dawson, 136 N.J. 1, 20, 641 A.2d 1026 (1994) (for collateral estoppel to apply, it must be shown that determination of the issue was essential to the prior judgment); see also Restatement (Second) of Judgments, § 27, *333 comment j. (1982) (the "question ... is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment"). Also, despite our observation that the present appeal is interlocutory, no one has questioned the trial judge's determination, for the purposes of finality, see In re Estate of Dawson, supra, 136 N.J. at 20, 641 A.2d 1026, that "[t]his order shall constitute a final judgment with respect to all issues covered by the Settlement Agreement." (Emphasis added).
For the limited purpose of defining the preclusive effect upon Edgewater of the trial judge's findings, we affirm the judge's legal determinations on the zoning and planning issues essentially for the reasons expressed in his comprehensive written opinion dated August 10, 1994. The judge's factual findings and legal conclusions are soundly based on substantial evidence, particularly the compelling testimony and comprehensive report presented by the court-appointed master. See Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974).
Edgewater, however, is not foreclosed from challenging subsequent amendments to the master plan and zoning ordinance on procedural grounds. Also, Edgewater and all other interested parties are not precluded from contesting subsequent planning board determinations concerning whether East/West's site plan or subdivision applications comply with pertinent municipal ordinance standards. See Pizzo Mantin Group v. Township of Randolph, 137 N.J. 216, 229, 645 A.2d 89 (1994); Lionel's Appliance Center, Inc. v. Citta, 156 N.J. Super. 257, 268-69, 383 A.2d 773 (Law Div. 1978).

II
Edgewater also argues that the settlement agreement should be rejected because it fails to provide sufficient low- and moderate-income housing. It notes that of the 598 units to be constructed, only ten percent are affordable units. This figure, Edgewater claims, falls far short of the twenty-percent minimum set by the Supreme Court in Mount Laurel II, supra, 92 N.J. at *334 279 n. 37, 456 A.2d 390 (in deciding the percentage of a project to be devoted to lower-income housing, "20 percent appears to us to be a reasonable minimum").
East/West claims that Edgewater lacks standing to press this claim. See Alexander's Dep't Stores, supra, 243 N.J. Super. at 165, 578 A.2d 1241. But whether or not Edgewater has standing, we still must decide if the settlement agreement is "fair and reasonable," that is, whether it adequately protects lower-income persons by providing substantial lower-income housing.
We do not read Mount Laurel II as mandating that every development which is part of a compliance plan include a minimum of twenty percent affordable housing units. The Court noted that a builder's remedy should be granted where the developer "proposes a project providing a substantial amount of lower income housing." Mount Laurel II, supra, 92 N.J. at 279, 456 A.2d 390. What is "substantial" is to be decided on a case-by-case basis by the trial judge considering a variety of factors. See ibid. n. 37. Moreover, the suggested "twenty percent" minimum pertained to inclusionary developments, and was made in the context of contested litigation, not, as here, in deciding the fairness of a proposed settlement agreement, reached after careful review and input by a court-appointed master. In fact, COAH regulations require a twenty percent minimum set-aside only when a municipality receives a vacant land adjustment. See N.J.A.C. 5:93-5.6(b)1. Otherwise, the municipality is free to determine its own set-aside level, subject to COAH review. N.J.A.C. 5:93-5.6(b).[6]
Caton testified that the sixty affordable units, together with East/West's $800,000 payment to Fort Lee constituted a "substantial" contribution toward satisfying Fort Lee's fair share obligation. He noted that under COAH regulations the $800,000 was equivalent to forty units ($20,000 per unit) if Fort Lee utilizes the *335 RCA alternative, N.J.A.C. 5:93-6.4(b), and even more if a portion of the contribution is dedicated to rehabilitation of existing units. Caton added that the remainder of the affordable units could be accounted for in Fort Lee's subsequent plan necessary to satisfy its remaining fair share obligation.
According to Caton, of even more importance is the uniqueness of the "phase in" provision of the settlement agreement. He stated that any perceived shortage of affordable units in Fort Lee's plan is insignificant in view of the developer's commitment to construct the affordable units within a specific period of time. As we understand the agreement, this commitment must be honored irrespective of when construction of the market-rate units is commenced.
Mount Laurel II recognizes the potential for a developer's foot-dragging where the developer receives density benefits in exchange for agreeing to construct affordable units.
Mandatory set-asides can be rendered ineffective if a developer builds all its conventional units first and then reneges on the obligation to build the lower income units. To avoid this problem, municipalities and courts should require that a developer phase-in the lower income units as the development progresses.
[Mount Laurel II, supra, 92 N.J. at 270, 456 A.2d 390.]
This "phase-in" requirement has been codified by COAH regulations which require commencement of the construction of affordable units only after more than twenty-five percent of the market-rate units have been completed. N.J.A.C. 5:93-5.6(d).
East/West's commitment here is greater than that required by either Mount Laurel II or COAH's regulations. Its willingness to risk its capital to construct the affordable units, notwithstanding the uncertainties of the real estate market, deserves consideration. Judge Skillman made this point in Morris County: in deciding whether a settlement is "fair," the judge must consider "whether the proposed settlement will result in the expeditious construction of a significant number of lower income housing units." Morris County, supra, 197 N.J. Super. at 372, 484 A.2d 1302.
*336 Edgewater also asserts that separating the affordable housing from the market-rate units violates the spirit of Mount Laurel. But we know of no judicial or legislative rule mandating inclusion of the affordable and market-rate units on a single site. The focus of the Mount Laurel doctrine is to provide housing by curing economic discrimination, not to achieve economic or racial balance. In re Denville, supra, 247 N.J. Super. at 194, 588 A.2d 1248. A municipality may provide its fair share of affordable units by "means of any technique or combination of techniques" which satisfy its Mount Laurel obligation. N.J.S.A. 52:27D-311a. COAH regulations even permit a transfer of up to fifty percent of the affordable units out of the municipality entirely by way of an RCA. N.J.A.C. 5:93-6.1(a). Finally, as Caton noted, building the market-rate and affordable units on the same site could frustrate East/West's commitment to construct the affordable units in advance, since prohibitive costs and depressed sales of the market units may necessarily delay construction of the structure intended to house both types of units.
We conclude that the settlement agreement is "fair and reasonable." See Morris County, supra, 197 N.J. Super. at 369, 484 A.2d 1302.

III
Edgewater also contends that various components of the settlement agreement are invalid because they violate specific provisions of the MLUL.
The settlement gives East/West "extended vesting on the market-rate project site plan approval for 10 years." This provision clearly conflicts with N.J.S.A. 40:55D-49, which states that a site plan approval grants the developer three years of immunity from major zoning changes. Nevertheless, in our view, this discrete provision is sustainable in the context of this Mount Laurel litigation.
Caton defended the extended vesting because East/West had agreed to build the affordable housing first, and the high-rise *337 project was a very sizable one consisting of over 1,000,000 square feet. He reasoned that, considering the probable delays in construction of the high-rise project because of its complexity and size, the developer should have some residuum of protection in consideration for that commitment. We agree.
Further, notwithstanding the absence of express authority in the MLUL, we are satisfied that the challenged provision comports with the express vesting provisions of the MLUL, if not the letter. Although N.J.S.A. 40:55D-49 grants immunity for only a three-year period, the planning board may grant two one-year extensions. N.J.S.A. 40:55D-49c. Also, final site plan approval immunizes the developer from zoning changes for two years with the planning board authorized to grant three one-year extensions. N.J.S.A. 40:55D-52a. Finally, the MLUL authorizes the board to grant extended protection for large residential developments and nonresidential sites having floor area of 200,000 square feet or more, taking into consideration "economic conditions" and "the comprehensiveness of the development." See N.J.S.A. 40:55D-49d; N.J.S.A. 40:55D-52b. East/West's project does not qualify under these provisions.
But the project would qualify if the high-rise were to be used as a hotel, since its gross floor area exceeds 200,000 square feet. In our view, it would offend the implied spirit of both the MLUL and the Mount Laurel doctrine to hold that extended vesting should be denied here simply because the residents in the East/West project will live there year round, rather than as short-term hotel guests, particularly since the vesting provision is essential to implementing a plan which will provide Mount Laurel housing.
In Mount Laurel II, the Court encouraged the use of a number of devices not expressly sanctioned by the MLUL, including density bonuses, mandatory set-asides and builder's remedies. Mount Laurel II, supra, 92 N.J. at 266-81, 456 A.2d 390. The vesting provision simply prohibits Fort Lee from rezoning the high-rise site for enough time to enable East/West to complete the project. Clearly, a court may prohibit a municipality from rezoning *338 a site designated for affordable housing under a settlement as part of the court's remedial power to enforce the municipality's Mount Laurel obligation. Morris County Fair Housing Council v. Boonton Tp., 220 N.J. Super. 388, 399, 532 A.2d 280 (Law Div. 1987), aff'd as modified, 230 N.J. Super. 345, 553 A.2d 814 (App.Div. 1989); see also N.J.A.C. 5:93-5.11(b) and N.J.A.C. 5:91-13.1 (defining COAH's continued regulatory control over zoning implemented by municipalities who receive substantive certification for their 1987-1993 obligations). In short, the affordable-housing and high-rise sites are part of one comprehensive compliance package, and it is likely that, even absent the ten-year repose in the settlement, the court would grant a developer reasonable time to finish the market-rate units after the developer has already paid substantial sums to enable the municipality to meet its Mount Laurel obligation. We therefore uphold the provision.
Edgewater also argues that the waiver of East/West's obligation to pay impact and linkage fees violates the MLUL.
The agreement provides that the planning board "agrees in concept that it will not subject either of East/West's applications to off-site improvement obligations ... or impact, development or `linkage' fees." Edgewater does not specify why the provision is illegal, but presumably it relies on N.J.S.A. 40:55D-42, which authorizes a municipality to adopt ordinances requiring that developers pay their fair share of reasonable and necessary off-site improvements.
However, off-tract improvement ordinances are not mandated by the MLUL. Moreover, Mount Laurel II held that, to meet their fair share, "municipalities must remove zoning and subdivision restrictions and exactions that are not necessary to protect health and safety." Mount Laurel II, supra, 92 N.J. at 259, 456 A.2d 390 (footnote omitted). In our view, the clause in question complies with that mandate.
Edgewater's claim that East/West "purchased" zoning benefits stems from the developer's agreement to pay the Fort *339 Lee $800,000 into Fort Lee's Mount Laurel Trust Fund to assist the Borough in meeting its affordable housing obligation in exchange for favorable zoning of the high-rise site. Edgewater relies primarily on Nunziato v. Planning Bd. of Edgewater, 225 N.J. Super. 124, 541 A.2d 1105 (App.Div. 1988), where the planning board exacted an ad hoc monetary contribution in exchange for site plan approval and a variance for a high-rise complex. We invalidated the approval on the theory that, in the absence of an ordinance with pertinent standards, municipalities could not demand and developers could not pay substantial sums of money in exchange for zoning benefits. Id. at 134, 541 A.2d 1105.
But, as we recently observed, Nunziato presented an extraordinary situation, "a process which bore all the hallmarks of a public auction intended to obtain the highest possible bid[.]" Township of Marlboro v. Planning Board of Holmdel, 279 N.J. Super. 638, 644, 653 A.2d 1183 (App.Div.), certif. denied, 141 N.J. 98, 660 A.2d 1196 (1995). Not every irregularity in the process of negotiating linkage fees or exactions warrants invalidation of an approval. Id. at 647, 653 A.2d 1183. There is nothing unlawful about a municipality granting a developer more favorable zoning in order to produce affordable housing. Also, municipalities have the authority to compel a developer to contribute to an affordable housing trust fund, see Holmdel Builders Ass'n v. Township of Holmdel, 121 N.J. 550, 586, 583 A.2d 277 (1990), and COAH regulations authorize negotiated development fees, subject to COAH review. N.J.A.C. 5:93-8.10.
Here, the contribution figure of $800,000 was reached after extensive negotiations under the supervision of a court-appointed master. Moreover, distribution from Fort Lee's Trust Fund will be subject to the continued jurisdiction of the trial judge. The contribution component of the agreement is fully sustainable.
Finally, Edgewater objects to the provision which requires "expedited review" by the Planning Board of East/West's site plan and subdivision applications, and to the use of the master to mediate disputes. There is nothing "expedited" about the *340 timetable set forth in the agreement: the Planning Board has forty-five days to review East/West's applications, the maximum allowed by the MLUL. N.J.S.A. 40:55D-10.3. Further, the board has 180 days within receipt of a complete application to issue final decision, considerably more time than the maximum of ninety-five days allowed for major subdivisions or site plan review. N.J.S.A. 40:55D-46c; N.J.S.A. 40:55D-48c. Moreover, a court has the power to order compliance with "expedited review" requirements in a settlement agreement in Mount Laurel litigation. Morris County, supra, 220 N.J. Super. at 398, 532 A.2d 280.
Nor is there anything illegal about the provision authorizing the master "to mediate at the request of any party any controversy that might arise during site plan approval and construction." Trial judges have been encouraged to utilize outside experts to determine and to enforce a municipality's Mount Laurel obligation, including assistance by the master in ensuring compliance. See Mount Laurel II, supra, 92 N.J. at 293, 456 A.2d 390.

IV
The Bojekians contend that the settlement is illegal because it calls for the construction of East/West's high-rise on a portion of a lot that has never been approved by the County Planning Board. As stated, the 538-unit high-rise is to be built on a 4.88-acre tract known as lot 2C. Prior to 1982, the tract was part of a 7-acre tract known as lot 2, block 3302. In June 1982, a prior developer was granted subdivision approval which divided lot 2 into a 1.97-acre lot (lot 2B) on which River Ridge is located, and lot 2C, the subject tract.
The Bojekians argue that the Bergen County Planning Board never approved the subdivision, a necessary step in the approval process since lot 2C abuts two County roads. N.J.S.A. 40:27-6.2c. The record does not establish one way or the other whether the County in fact approved the subdivision creating lot 2C.
*341 However, we agree with Fort Lee that it does not matter. This is an issue that can and should be addressed during East/West's subsequent site plan or subdivision applications. Indeed, Bergen County is a party to the settlement agreement and has agreed on behalf of itself and the County Planning Board to properly review the East/West development applications. If County Planning Board approval was required and not obtained in 1982, that oversight can be easily remedied.
The remaining issues raised by the Bojekians on appeal are without merit. R. 2:11-3(e)(1)(E).
Except as modified, the partial judgment approving the settlement is affirmed.
NOTES
[1] Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel, 67 N.J. 151, 336 A.2d 713, appeal dismissed and cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) (Mount Laurel I); Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983) (Mount Laurel II).
[2] Edgewater's appeal is interlocutory in nature, since no final judgment of compliance has been entered. The August 29, 1994 order appealed from by Edgewater approves the settlement "as a component of Fort Lee's compliance package" and directs Fort Lee to submit its entire compliance plan to the master and trial court within six months and to "thereafter move for a Final judgment of Compliance and Order for Repose." The fact that the order provides that it shall constitute "a final judgment with respect to all issues covered by the Settlement Agreement" does not render the order final for purposes of an appeal as of right. R. 2:2-3(a)(1). Nevertheless, we now grant Edgewater leave to appeal nunc pro tunc, R. 2:4-4(b)(2), in view of the age of the case and to expedite resolution of all remaining issues before the trial judge considers entry of a final judgment of compliance.
[3] A subcommittee of the Supreme Court Committee on Civil Practice is presently considering a proposal to amend R. 4:69 which would permit land use litigation to be settled upon approval by the court, provided appropriate procedural safeguards are established and followed. Warner, supra, 274 N.J. Super. at 477, 644 A.2d 656; see Hon. Richard S. Cohen, et al., Settling Land Use Litigation While Protecting the Public Interest: Whose Lawsuit Is This Anyway?, 23 Seton Hall L.Rev. 844, 857 (1993), for a comprehensive discussion of the issues relating to the settlement of land use cases.
[4] Zoning ordinances must (1) advance one of the purposes of zoning, as set forth in the MLUL, (2) be substantially consistent with the land use and housing elements of the master plan, unless the municipality adopts a resolution explaining the inconsistency, (3) comport with constitutional constraints on the zoning power, such as due process, and (4) be adopted in accordance with statutory and municipal procedural requirements. Riggs, supra, 109 N.J. at 611-12, 538 A.2d 808.
[5] We were advised during oral argument that Fort Lee has recently adopted the proposed ordinance and that Edgewater has filed a prerogative writs action challenging it.
[6] Our Supreme Court in Hills Dev. Co. v. Township of Bernards, 103 N.J. 1, 63, 510 A.2d 621 (1986), has directed that "proceedings before a court should conform wherever possible to the ... criteria[] and guidelines of [COAH]."