**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1632-21

IN RE CLINTON TOWNSHIP
COMPLIANCE WITH THIRD
ROUND MOUNT LAUREL
AFFORDABLE HOUSING
OBLIGATION.

Argued November 15, 2023 – Decided February 16, 2024

Before Judges Currier, Firko and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-0315-15.

Patrick J. Mullaney argued the cause for appellant Kerwin-Savage Partnership.

Jonathan Edward Drill argued the cause for respondent Township of Clinton (Stickel, Koenig, Sullivan & Drill, LLC, attorneys; Jonathan Edward Drill, of counsel and on the brief).

Guliet D. Hirsch argued the cause for respondent CRC Communities at Headley Farm Estates, Inc. (Archer & Greiner, PC, attorneys, join in the brief of respondent Township of Clinton).

Joshua David Bauers argued the cause for respondent Fair Share Housing Center (Fair Share Housing Center,

attorneys; Joshua David Bauers, of counsel and on the brief).

PER CURIAM

Kerwin-Savage Partnership (K&S) appeals from a December 2021 order approving the Township of Clinton's (the Township) Revised Third Amendment (Third Amendment) to its Mount Laurel[1] affordable housing plan. The order, which followed a fairness hearing, found that the proposed Third Amendment negotiated between the Township and the Fair Share Housing Center (FSHC) was fair and protected the interest of low- and moderate-income households in the region. We affirm.

K&S is the developer of property—108 Alton Place—that is part of the Township's affordable housing plan. In 2015, the Township filed a verified complaint seeking declaratory judgment that it had satisfied its Third Round obligation to provide affordable housing pursuant to Mount Laurel and consistent with In re Adoption of N.J.A.C. 5:96 & 5:97 by the New Jersey Council on Affordable Housing (Mount Laurel IV), 221 N.J. 1 (2015). The court appointed a Special Master to assist in making determinations regarding affordable housing. K&S attempted to intervene in this suit twice—the first

---

[1] S. Burlington Cnty. N.A.A.C.P. v. Twp. of Mount Laurel (Mount Laurel I), 67 N.J. 151, appeal dismissed and cert. denied, 423 U.S. 808 (1975).

motion was denied without prejudice because K&S was not represented by counsel; the second motion was denied as untimely.

After the Township and FSHC entered into an initial settlement agreement in 2017, the trial court conducted a fairness hearing and designated FSHC as an intervenor-defendant. The agreement was amended in February 2018 and approved by the court in April 2018. After a compliance hearing, the court entered a final judgment of compliance and repose in favor of the Township in January 2019, declaring the Township was in compliance with its Third Round Mount Laurel obligations. K&S did not appeal from the final judgment. We affirmed the court's orders. In re Clinton Twp. Compliance with Third Round Mount Laurel Affordable Hous. Obligation, No. A-2633-18 (App. Div. Jan. 30, 2020) (slip op. at 15). The Township and FSHC agreed to a second amendment to the agreement in June 2020.

The subject of this appeal is the May 2, 2021 Third Amendment to the Township's Third Round affordable housing plan. The Third Amendment, as approved, contains four sites which will produce affordable housing in the Township under an inclusionary zoning model (as opposed to a 100% affordable

development) and subjects three of those four sites to "durational adjustments."[2]

K&S's property is subject to a durational adjustment and is fourth on the priority list. K&S objected to the proposed Third Amendment, asserting the Township had surplus water and sewer capacity and, therefore, the durational adjustments and priority rankings contravened the intent of the settlement—to serve the low- and moderate-income households in the region through the development of affordable housing.

Thereafter, the court held a combined fairness and compliance hearing over three dates in September and November 2021. The Township submitted the settlement agreement resulting in the Third Amendment, a later revision to the Third Amendment[3] and two reports from the Special Master.

The Township also presented testimony from its municipal planner, Thomas Behrens, who was qualified as an expert in "professional planning with [a] specialty in the field of [a]ffordable [h]ousing." Behrens explained that the Third Amendment was needed to replace a prior approved site to satisfy the

---

[2] A "durational adjustment" allows the municipality "to postpone satisfaction of its affordable housing obligation until water and sewer service actually become available." In re Petition for Substantive Certification, Twp. of Southampton, 338 N.J. Super. 103, 106 (App. Div. 2001).

[3] The revisions to the Third Amendment moved one site ahead of 108 Alton Place on the priority list, leaving 108 Alton Place fourth on the list.

Township's Third Round <u>Mount Laurel</u> obligation.  The prior approved site, which was no longer available, had been subject to a durational adjustment in the initial agreement.  One of the new replacement sites was placed at the top of the Township's priority list for water and sewer allocation because it had both the highest percentage set-aside for affordable housing and the most units of affordable housing of any project.

Behrens opined that the Third Amendment and overall agreements satisfied the five-part test under <u>East/West Venture, a New York Partnership v. Borough of Fort Lee</u>, 286 N.J. Super. 311, 328 (App. Div. 1996), as it ensured fairness to low- and moderate-income people.  He also opined that the two larger replacement sites substituted into the Third Amendment satisfied the standard established in <u>Allan-Deane Corp. v. Township of Bedminster</u>, 205 N.J. Super. 87, 113 (App. Div. 1985), that "[a] municipality must provide a realistic opportunity for the construction of its fair share."

K&S's counsel questioned Behrens about the propriety of the durational adjustments.  Behrens stated he had reviewed the documentation submitted by K&S.  However, he asserted that K&S did not "have all the pieces of the puzzle" because it focused on "capacity and flow" and not "allocations."  As an example, Behrens described a "Foster Wheeler site located in Union Township" that

contracted for water and sewer capacity through the Clinton Township Sewerage Authority (CTSA) and the Town of Clinton's Water Department (Water Department). According to Behrens, those allocations acted as contractual holds. Therefore, the CTSA and Water Department must keep the flow amounts associated with those allocations available even if they are not in use. When K&S showed Behrens a document from the Water Department regarding public water deficit/surplus, he confirmed that it stated the Water Department had a "supply term capacity" of 2.902 million gallons per day but again reiterated the document did not show the "full picture," because it did not address the allocation of the water capacity. He further testified that the Township has "assisted in securing sewage capacity and water capacity for 100 percent Affordable Housing sites," in accordance with its housing plan and prioritization of sites.

The court admitted the Special Master's reports into evidence. The Special Master opined that

> the modifications set forth in the . . . Third Amendment
> . . . approved by the [c]ourt are de minimis and continue
> to satisfy the standards prescribed in East/West Venture
> . . . and are, therefore, fair and reasonable, and protect
> the interest of low- and moderate-income households.
>
> [(italicization omitted).]

The Special Master further "opined that the modifications of the Township's compliance plan . . . and the prioritization of the durational adjustment per the . . . Third Amendment . . . continue[] to represent a realistic opportunity for the development of affordable housing as proposed."

After considering the testimony and evidence presented during the fairness hearing, the Special Master issued a second report. He stated:

> The crux of the K&S objection appears to be a claim that there have been substantial changes in the underlying facts forming the basis of the [c]ourt's prior determination and grant of a durational adjustment pursuant to the COAH[4] rules governing lack of sewer and water facilities found at N.J.A.C. 5:93-4.3. In my opinion no credible testimony or evidence has been presented by K&S that the . . . Third Amendment . . . or the Township's compliance plan implementing same, is inconsistent with N.J.A.C. 5:93-4.3 and thus not entitled to the continuance of the prior durational adjustment. Furthermore, . . . no credible definitive testimony or evidence has been presented that any of the designated affordable housing sites in question . . . cannot be practically connected to existing sewer and water collection/distribution facilities. Questions remain as to the availability at this time of adequate allocated capacity to accommodate all four sites and thus establishing the appropriateness of prioritizing the sites to maximize the production of affordable units given the limits on available allocation capacity.

---

[4] Council on Affordable Housing

In addressing K&S's contention regarding the water and sewer capacity order of priority, the Special Master stated:

> Notwithstanding K&S's claims to the contrary, the 108 Alton Site is a "priority site" to receive water and sewer allocation capacity pursuant to the . . . Third Amendment . . . , just not the highest priority based upon reasonable ranking criteria . . . intended to protect the interest of low- and moderate-income households in the region.

The Special Master continued: "While the rationale and basis for the objection to the fourth position ranking are not supported by testimony, evidence or COAH rule, there may be some merit to the objection as to [the] fourth position priority ranking of the 108 Alton Site." The Master found it was "logical" to replace the previously approved site with the new site on "a one-for-one basis." However, the Special Master stated the court could place the third listed site and 108 Alton Site on "equal priority footing" behind the first two sites.

The Master reiterated his opinion that the Third Amendment was fair and reasonable, and "the Township ha[d] sufficiently documented its claim that the compliance plan . . . in the . . . Third Amendment . . . continue[d] to represent a realistic opportunity for the development of affordable housing as proposed." The Special Master recommended the court approve the Third Amendment.

8

Michael Savage and Walter Wilson—partners with K&S—testified as lay witnesses with personal knowledge of the construction projects. Savage stated he calculated the actual available sewer capacity using publicly available documents and records received pursuant to OPRA[5] requests. He also relied on billing statements from "all five sewer service areas within the Township."

Savage concluded there was 207,340 gallons per day of available sewer capacity at the CTSA facility, and the available capacity should be made available for affordable housing projects. Savage then calculated that the five projects encompassed in the Third-Round obligation required approximately 201,375 gallons per day of sewer capacity. Therefore, Savage asserted there was sewer capacity available even after satisfying the affordable housing projects' needs.

Savage contended the CTSA and Township "have an obligation to recapture sewer capacity." However, Savage conceded that when the full contractual allotments are taken into account, the available capacity would drop below the threshold needed to supply sewer service to all of the affordable housing projects under the Third Amendment.

---

[5] Open Public Records Act, N.J.S.A. 47:1A-1 to -13.

Savage also testified regarding water capacity, asserting the Water Department was only using seventy-two percent of its capacity. According to his calculations, there would still be available water capacity even after the five affordable housing sites received their full usage. According to Savage, unlike with the sewer capacity issue, it was unnecessary for the Township to reclaim water allocations, because there was enough capacity to accommodate all allocations.

Wilson conducted a personal investigation of water resources available from the Water Department, also utilizing records received from OPRA requests and public documents. He testified that infrastructure was currently available for water service at 108 Alton Place.

On December 10, 2021, the court approved the settlement in a sixty-one-page comprehensive and well-reasoned written decision.[6]

The court found that the purpose of the Third Amendment was to replace a previously approved site with two new sites and that the modification required addressing "sewer and water capacity issues." The court noted that one of the new sites replaced the prior site at number one in the priority list because it

---

[6] The decision was amended on December 13, 2021 with minimal changes not relevant to the issues on appeal.

provided the greatest number of affordable units among the developments subject to the Third Amendment.

The court also considered the Special Master's reports and agreed with the Master's conclusion that the Third Amendment was fair and reasonable and adequately protected "the interests of low[-] and moderate[-]income households in the region." The court considered the Special Master's application of the five part analysis in East/West Venture and also made its own findings and evaluation. The court also gave weight to the FSHC's approval of the Third Amendment. In addition, the court found Behrens's testimony was "detailed, credible, and persuasive." The court further stated it was deferring to the Township's determinations on priority rankings, leaving 108 Alton Place ranked last.

In addressing K&S's objections and contentions regarding sewer and water capacity, the court noted K&S and its counsel appeared at the 2018 fairness hearing on the initial settlement agreement and raised the same issues regarding available capacity and durational adjustments. However, K&S did not object to the initial Amended Settlement agreement "which designated the 108 Alton Place site as a durational adjustment site and gave the site last priority for sewer and water capacity among the affordable housing sites that were

11

approved." In addition, the court remarked that K&S's counsel was present at the 2018 compliance hearing but did not raise any objections. The court stated: "In other words, not only did K&S fail to object during the two prior hearings but it also failed to appeal from the entry of the Final Judgment." Nevertheless, although the court found it "unfortunate and ill-advised" that K&S did not "raise the issue[s] at the original [f]airness [h]earings," it should not be precluded from presenting its "colorable arguments" here.

The court found that the Township established a prima facie case that the Third Amendment as revised was fair and reasonable and it demonstrated continued compliance with its affordable housing plan. Therefore, the burden shifted to K&S to prove otherwise.

However, according to the court, K&S did not present any evidence to support a finding that the Third Amendment was not fair to low- and moderate-income households. Instead, it objected to the designation of 108 Alton Place as a durational adjustment site. In addition, K&S sought an order granting it top priority over all the other affordable housing projects and requiring the Township to acquire available sewer and water capacity and "claw back" unused capacity for K&S to use. The court noted this relief would affect the rights of other users of sewer capacity—users who were not parties to the proceeding.

Nor was the CTSA, and as the owner and distributor of the sewer capacity, it had an obvious interest in the outcome of the issue.

The court stated:

> In this [c]ourt's experience, the determination of the available sewer and water capacity is likely not as simple as the theory and mathematical analysis that K&S provided through its presentation of its case. It would not be surprising to the [c]ourt if there was another side, in fact perhaps many other sides, to the issue. . . . [I]n order to address the matter, if it is to be addressed at all, the issue is likely one that should be litigated fully with all interested parties involved before the [c]ourt is asked to adjudicate it.

The court concluded that because all necessary parties to consider and resolve the issues were not present, it could not grant K&S's request for specific relief. The court commented that K&S could litigate any relief it deemed suitable against the CTSA and the Water Department in the appropriate proceeding.

The court reiterated the purpose of the fairness and compliance hearing was to determine whether the Third Amendment was fair to low- and moderate-income households and whether the plan continued to create a realistic opportunity to create affordable housing. However, K&S did not ground its objections on that premise but rather asserted the Third Amendment was unfair to its site. The court found Savage's and Wilson's testimony "was influenced by self-interest" and merited "little credence." The court explained that

A-1632-21

> [b]oth witnesses have ownership interest in K&S meaning, of course, that these two witnesses were not independent individuals who researched the sewer and water capacity issues they raised during the hearing. Rather, both of these witnesses had a financial interest in the outcome of the proceeding. Moreover, there were inconsistencies or omissions from their testimony that causes the [c]ourt to question the accuracy of the information presented.

The court concluded that "the priority list was established in a reasonable way and in a way that is fair to lower-income households." The court further found that the priority list was logical, stating "[i]t prioritizes sites that will produce the most affordable housing, those receiving public funds, and sites which are further along in the development process." Referring to the top listed site, the court stated: "It is self-evident that the site providing nearly three times as many affordable housing units is more worthy of the necessary infrastructure and would result in an agreement that better protects the interest of lower-income households." The court determined K&S did not meet its burden to demonstrate the agreement was not fair and reasonable. The court memorialized its decision in a December 21, 2021 order.

On appeal, K&S contends the court erred in: (1) determining the Township established a prima facie case that the Third Amendment satisfied its affordable housing obligation; (2) not making specific findings on the use of durational

14

adjustments; and (3) finding K&S's claim could not be adjudicated because the necessary parties were not before it.

Our review of the results of a Mount Laurel fairness hearing is de novo. In re Application of Twp. of Bordentown, 471 N.J. Super. 196, 217 (App. Div. 2022) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)), certif. denied, 252 N.J. 533 (2023). We will "'not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)).

We are unpersuaded by appellant's arguments and affirm substantially for the reasons expressed in the court's cogent written opinion. We add the following comments.

"Trial courts have broad discretion when reviewing a municipality's Mount Laurel fair share plan for constitutional compliance." Bordentown, 471 N.J. Super at 217-18 (citing Mount Laurel IV, 221 N.J. at 30). "The trial court's role is to approve or reject the proposed settlement in its entirety as written and

the court may not revise or amend particular provisions." Id. at 217. This framework allows trial courts to assess the "prompt voluntary compliance" of a municipality's affordable housing obligations and avoid "lengthy delay in achieving satisfaction of towns' Third Round obligations." Mount Laurel IV, 221 N.J. at 33.

A proposed settlement is "fair[]" when "the settlement adequately protects the interests of lower-income persons on whose behalf the affordable units proposed by the settlement are to be built." East/West Venture, 286 N.J. Super. at 328.

> That analysis involves a consideration of the number of affordable housing units being constructed, the methodology by which the number of affordable units has been derived, any other contribution being made by the developer to the municipality in lieu of affordable units, other components of the agreement which contribute to the municipality's satisfaction of its constitutional obligation, and any other factors which may be relevant to the "fairness" issue.
>
> [Ibid.]

A municipality must provide a "realistic opportunity" for the development of affordable housing. S. Burlington Cnty. N.A.A.C.P. v. Twp. of Mount Laurel (Mount Laurel II), 92 N.J. 158, 220-21 (1983). "'Realistic' is defined by the Court in terms of 'likelihood.'" Allan-Deane Corp., 205 N.J. Super. at 113

16

(quoting Mount Laurel II, 92 N.J. at 221-22). In the context of a fairness hearing, the court must determine "whether there is in fact a likelihood—to the extent economic conditions allow—that the lower income housing will actually be constructed." Mount Laurel II, 92 N.J. at 221-22.

It is a municipality's burden at a fairness hearing to make a prima facie case that the settlement is compliant with the town's constitutional affordable housing obligations. Bordentown, 471 N.J. Super. at 233. Once such a prima facie case is made, the burden shifts to the objector to show that the municipality is not compliant. Ibid.

As we recently stated, "[t]he purpose of a fairness hearing is not to determine if there exists an alternative plan, which may more efficiently provide low-income units, but rather is restricted to the question of whether" the settlement agreement as a whole "provides 'a realistic opportunity for the municipality to achieve its "fair share of the present and prospective regional need for low[-] and moderate[-]income housing."'" Id. at 221 (second and third alterations in original) (quoting Mount Laurel IV, 221 N.J. at 25) (quoting Mount Laurel II, 92 N.J. at 205). We cautioned trial courts conducting fairness hearings to "'stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case.'" Id. at 220-21 (quoting Sutter v.

17

Horizon Blue Cross Blue Shield of N.J., 406 N.J. Super. 86, 102 (App. Div. 2009)).

Here, the trial court recognized the focus of the fairness hearing was the fundamental fairness of the agreement. The court accepted the testimony of the Township's planner, Behrens, as competent and credible. Behrens testified that: the reason for the Third Amendment was to substitute available sites for an unavailable site to ensure the Township could comply with its affordable housing obligations; the application of the five-part test under East/West Venture led to the conclusion that the agreement was fair; the two new sites substituting for a previously approved site realistically resulted in the construction of units that would count towards the Township's obligation; and the Township's planning board and council were active in conforming town ordinances and zoning regulations to accommodate the proposed Third Amendment.

The court accorded Savage's and Wilson's testimony minimal credibility because of their clear economic interest and evasive answers during the hearing. Those credibility findings are well supported by the record and do not represent an abuse of discretion. In addition, the court was within its discretion to view K&S's exhibits on water and sewer capacity as flawed because they did not

properly document or account for allocations within the CTSA's and the Water Department's authority regardless of actual flow rates.

We are satisfied the court did not err in finding the Township made its prima facie case that the agreement and Third Amendment as revised were fair to low- and moderate-income persons in the region, and resulted in the likelihood that affordable units would be constructed.

Thereafter, the court shifted the burden to K&S. After listening to K&S's witnesses, the court determined the information presented did not undermine the Township's prima facie case that the settlement was fair. The court provided detailed reasons for its rejection of K&S's objections to the fairness of the settlement.

We only need briefly address K&S's remaining contentions. As to the durational adjustments, as stated, a court is not permitted to modify individual elements of a proposed affordable housing settlement. Bordentown, 471 N.J. Super. at 217. It restricts itself to determining if the entire agreement is fair. Bordentown, Ibid. The trial court properly assessed the fairness of the Third Amendment; the durational adjustments are a component piece of the global settlement.

19

K&S also challenges the court's determination that CTSA and the Water Department were necessary parties to resolve the issue of water and sewer capacity. There were outstanding allocations that complicated the availability of water and sewer resources. Therefore, the court could not grant K&S's requested relief—to move it to the top of the priority list and compel the CTSA and the Water Department to take immediate action to supply utility to K&S's site—without the participation of those utilities.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1632-21