NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1539-23

JUSTINO GONZALEZ and
STACEY JOY FOX,

     Plaintiffs-Appellants,

v.

TOWNSHIP OF WEST WINDSOR,
TOWNSHIP OF WEST WINDSOR
PLANNING BOARD, BRIDGE
POINT WEST WINDSOR, LLC,
and CLARKSVILLE CENTER LLC,

     Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **February 11, 2026**
>
> **APPELLATE DIVISION**

Argued April 8, 2025 – Decided September 25, 2025

Before Judges Smith, Chase, and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2205-22.

Robert F. Simon argued the cause for appellants (Herold Law, PA, attorneys; Robert F. Simon, of counsel and on the briefs; John P. Kaplan and Amanda M. Kronemeyer, on the briefs).

Gerald J. Muller argued the cause for respondents Township of West Windsor and Township of West Windsor Planning Board (Muller & Baillie, PC, attorneys; Gerald J. Muller and Martina Baillie, of counsel and on the brief).

Thomas J. Trautner Jr., argued the cause for respondent Bridge Point West Windsor, LLC, (Chiesa Shahinian & Giantomasi PC, attorneys; Thomas J. Trautner Jr., Marc E. Leibman, and Alyssa E. Spector, on the brief).

C. John DeSimone, III, argued the cause for respondent Clarksville Center, LLC (Day Pitney LLP, attorneys; C. John DeSimone, III, of counsel and on the brief; Stephen R. Catanzaro, on the brief).

The opinion of the court was delivered by

SMITH, J.A.D.

Plaintiffs Justino Gonzalez and Stacey Fox appeal two trial court orders dismissing their complaint. The complaint challenged defendant, West Windsor Township's (Township) adoption of a new zoning ordinance which facilitated a 5,000,000-square-foot commercial/industrial project. The project was developed by co-defendant Bridge Point West Windsor, LLC (Bridge Point) and owned by co-defendant Clarksville Center, LLC (Clarksville). The trial court granted co-defendants' Rule 4:6-2(e) motion to dismiss the first five counts of the complaint with prejudice as time-barred. Next, after a bench trial, the court dismissed remaining counts six through eight.

Plaintiffs appeal, contending, among other things, that the trial court erred by finding the first five counts were time-barred and by finding that the

West Windsor Planning Board's (Board) approval of Bridge Point's application for site plan and subdivision approval was not arbitrary and capricious.

We affirm for the reasons which follow.

I.

Plaintiffs are owners of two residential properties located on Clarksville Road in West Windsor. Their properties are adjacent to the disputed tract.[1]

Defendant Clarksville is the owner of a 539-acre property known as the Howard Hughes tract, located near the southeasterly corner of the intersection of Route 1 and Quakerbridge Road in West Windsor (the property or Howard Hughes tract).[2] The property is part of a larger Clarksville-owned tract totaling 645 acres. This larger tract currently constitutes the Township's entire planned commercial development (PCD) zone. The Howard Hughes tract property consists of a mix of unimproved property and dilapidated vacant structures.

The record shows Bridge Point's development plan was to consolidate various smaller lots into six large lots on the Howard Hughes tract, then

---

[1] The record shows that plaintiffs' properties abut a main access road, Clarksville Rd., which bifurcates the subject property. Their properties sit just outside the rezoned tract.

[2] The property is comprised of the following blocks/lots according to the Tax Map of West Windsor: Block 8, Lots 1, 2, 3, 12, 16, 20, 28, 32.01, 39, 40, 41, 45, 46, 47, and 49 and Block 15.14, Lots 18, 19, 20, 22 and 75.

construct seven buildings, representing over 5,000,000 square feet of warehouse space. Construction is scheduled to take place in two phases: first, construction of roads and utilities, access roads, three warehouse buildings, and a storm water management system; and second, construction of four additional warehouse buildings and corresponding storm water management systems. The remaining five lots would be later developed for both commercial and retail use.

The Township's PCD zone emerged from years of affordable housing litigation. We provide some background, then transition our narrative to the current litigation.

Prior Litigation

Prior to Bridge Point's application, the Howard Hughes tract had been the subject of extensive litigation dating back to 2015. In July 2015, the Township filed an affordable housing declaratory judgment action seeking confirmation of compliance with its third-round affordable housing obligation pursuant to the Mount Laurel doctrine[3] and the Fair Housing Act of 1985, N.J.S.A. 52:27D-301 to -329.20 (the DJ action). The Fair Share Housing Center intervened as a Supreme Court designated interested party, as did

---

[3] NAACP v. Twp. of Mount Laurel (Mount Laurel I), 67 N.J. 151 (1975).

Atlantic Realty Development Corporation (Atlantic/Clarksville).[4]  The parties reached a settlement in 2018, agreeing that the Township had satisfied its third-round affordable housing obligation to provide low- and moderate-income housing by facilitating construction of affordable housing in specific locations.  The settlement also included a provision for the Township's adoption of a housing element and fair share plan.  The settlement excluded the Howard Hughes tract as a site for affordable housing development.

Judge Mary C. Jacobson conducted a fairness hearing in November 2018, then issued an order approving the settlement agreement in January 2019.  The judge found the Township had complied with its Mount Laurel obligations.  After a May 2019 compliance hearing, Judge Jacobson entered a judgment of compliance and repose, protecting the parties from any builder's remedy lawsuits through June 30, 2025.  Three months later, Atlantic/Clarksville appealed the judge's order.  Atlantic/Clarksville challenged the terms of the settlement, contending that the Howard Hughes tract was a more suitable site for affordable housing than other sites identified in the settlement.

---

[4]  Atlantic Realty Development Co. is a predecessor to Clarksville, who purchased the property from Princeton Land, LLC (Princeton).

While the appeal was pending, Princeton filed a verified complaint in lieu of prerogative writs against the Township challenging its failure to approve a residential development on the Howard Hughes tract. Hoping to develop the Howard Hughes tract for residential use that included 2,000 units of inclusionary family housing, Princeton alleged that the current zoning of the property was "obsolete."

During this interim period, which saw two lawsuits, settlement negotiations, an actual settlement, and a challenge to that settlement; the Board began a reexamination of the Township's master plan pursuant to the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -171.[5] The reexamination led to creation of a master plan reexamination report (REX report), which was approved by the Board on May 23, 2018, after several public meetings. By fall 2018, the Board began to update the Township's master plan, including the adoption of a land use plan element. On February 12, 2020, the Board adopted the new land use plan element of the master plan (new MP). Importantly, section 3.3.5 of the plan was entitled "Planned Commercial District (PCD)." It recommended a new commercial district land

___

[5] The MLUL requires that "[t]he governing body shall, at least every 10 years, provide for a general reexamination of its master plan and development regulations by the planning board, which shall prepare and adopt by resolution a report on the findings of such reexamination." N.J.S.A. 40:55D-89.

use category which rezoned a significant portion of the Howard Hughes tract to a PCD. According to the new MP, the PCD would support a broad swath of nonresidential uses, including warehouses.

Global Settlement

Eventually, the Township and various parties, including Atlantic/Clarksville, entered into a global settlement agreement and consent order (the "settlement") to resolve the litigation. As part of the settlement, Atlantic/Clarksville abandoned its efforts to develop the Howard Hughes tract as a residential site. Significantly, the settlement terms included a conceptional site plan permitting the construction of the warehouses, with an additional 150,000 square feet for retail space. The settlement terms also required the Township to adopt a rezoning ordinance, which it did.

Adoption of Ordinance 2020-25

In accordance with the settlement and its new MP, the Township introduced Ordinance 2020-25. After publishing the required notice, the Township adopted Ordinance 2020-25 at its December 14, 2020, regular meeting. The Township published notice of the ordinance's adoption on December 18, 2020.

The ordinance's adoption set the stage for Bridge Point's application to the Board seeking approval of its commercial development plan. In November

2021, Bridge Point applied to the Board for subdivision and site-plan approval seeking to construct seven warehouse buildings and ancillary improvements. In its application, Bridge Point sought fourteen design waivers,[6] and an initial vesting period of ten years for approvals, given the size and complexity of the proposed construction.

---

[6] Our review of the record reveals information concerning the twelve waivers that were approved. They included: (1) 2,201 parking spaces proposed (including 200 land bank spaces) where 1,754 spaces are permitted; (2) 910 loading bays proposed where 147 loading bays are permitted; (3) 12 square-foot directional signage proposed where 2 square feet is permitted; (4) 24 inch-high street address signage proposed where 8 inches is permitted; (5) monument sign area of 60 square feet proposed where 48 square feet is permitted; (6) monument signage 16 feet high proposed where 4 feet is permitted; (7) the [a]pplicant proposed to approximate the number of trees of 5+-inch caliper based on a sampling approach, whereas all such trees must be identified; (8) the [a]pplicant proposed to plant 4-inch caliper trees within 100 feet of a building, where one 4-inch caliper tree is required for every 40 linear feet of building perimeter within 75 feet of certain building; (9) the [a]pplicant sought a relaxation of the requirement that stormwater detention areas are to be graded "creatively to blend into the surrounding landscape and imitate a natural depression with an irregular edge"; (10) the [a]pplication proposed to locate eight stormwater basins entirely within a buffer area, where a maximum of 50% of the basin may be located within a buffer area; (11) the [a]pplicant proposed 1.7 and 2.0 footcandles in the passenger car parking areas and 2.2 and 2.4 footcandles in the truck parking areas, where the average permitted light intensity is 0.5 footcandles throughout parking areas; (12) the [a]pplicant proposed 3.1 to 4.4 footcandles, where the required light illumination at intersections is 3.0 footcandles; and (13) the [a]pplicant proposed to exceed, at driveway intersections with Clarksville Road, the maximum permitted light intensity of 1.0 footcandles at property lines.

In early 2022, the Board conducted five public hearings beginning on May 11 and ending on June 29. Bridge Point published notice of these hearings on April 27 and sent individual notice to property owners within 200 feet of the property by certified mail, in accordance with the requirements of the MLUL. Bridge Point provided proof of service to the Board, and no one objected to the notice.

The Board took testimony from several Bridge Point witnesses: John Porcek, Executive Vice President for Bridge Industrial; Bryan Waisnor, project engineer; Benjamin Mueller, acoustical expert; Karl Pehnke, traffic engineer; Michael Baumstark, architect; and John McDonough, project planner. The Board also took testimony from its professionals: David Novak, township planner; Dan Dobromilsky, township landscape architect; Jeffrey A. L'Amoreaux, township traffic-engineering consultant; and Christopher B. Jepson, township environmental engineer.

Fifty members of the public spoke at the hearing, including plaintiff Fox, who "expressed concern about the manner of public hearing regarding the settlement agreement, about the lack of analysis of the impact of gas emissions on school children, and asked how much Clarksville Road would be widened to accommodate the project." Nothing in the record shows that Gonzalez made a statement or was present at these hearings.

The Board approved Bridge Point's application subject to numerous conditions. Next, it granted twelve of the design waivers Bridge Point sought, while denying two waivers relating to signage. Bridge Point then published notice of the Board's action on November 9.

Current Litigation

On December 22, 2022, plaintiffs filed a complaint in lieu of prerogative writs against defendants. Plaintiffs sought to overturn: the Township's approval of Ordinance 2020-25 which re-zoned certain property; and the Board's approval of Bridge Point's phase I preliminary and final major site plan, phase II preliminary major site plan, and phase I subdivision to construct a warehouse and distribution center in West Windsor.

Plaintiffs' prerogative writs action contained eight counts. Counts one through five challenged the notice and adoption of the ordinance. Specifically, count one alleged that the Township violated N.J.S.A. 40:55D-62.1 by failing to provide proper notice of hearings. Count two alleged that the new ordinance was inconsistent with the terms of the settlement consent order. Count three alleged that the new ordinance was invalid because its adoption was the result of a quid pro quo. Count four alleged illegal spot zoning. Count five alleged that "[t]he decision of the Board not to permit remote public participation at its December 9, 2020 consistency review of Ordinance 2020-

A-1539-23

25 . . . violated the public's constitutional rights to procedural due process, substantive due process, and equal protection."

Counts six through eight attacked the Board's approval of Bridge Point's application. In sum, count six asserted that the Board's approval of the application was arbitrary, capricious, and unreasonable. Count seven alleged that the Board lacked jurisdiction to hold the public hearings because it failed to provide proper notice of the application. Count eight alleged that Bridge Point failed to seek all the required relief necessary to obtain approval, including an environmental impact statement.

Bridge Point and Clarksville each moved to dismiss, alleging, among other things, that plaintiffs' objections were filed outside of the forty-five-day limitation period proscribed by Rule 4:69-6 regarding counts one through five. The Township did not participate in these motions. After argument on April 25, 2023, the court granted both motions. It issued a corresponding order and supporting statement of reasons dated May 26, dismissing counts one through five with prejudice.

The trial court made a series of findings in support of its dismissal. It found that "there is no public interest here. Plaintiffs are private individuals." Likewise, the court also rejected plaintiffs' spot zoning and affordable housing allegations, noting that "[p]laintiffs fail to explain how the [o]rdinance

concerns affordable housing" and confirmed that the ordinance was the product of a comprehensive reexamination process, not spot zoning. The court also dismissed the quid pro quo allegations, stating that the ordinance was the result of settlement efforts ultimately approved by Judge Jacobson.

The court summarized its findings and decision:

> It is undisputed here that [p]laintiffs brought this action about two years after the Settlement Order and Ordinance 2020-25. Their claims do not support, in the interests of justice, extending the 45-day [] filing deadline.
>
> The constitutional . . . exception to the 45-day limitation is not an avenue for plaintiffs to sleep on their rights for years[,] . . . then [allege a] constitutional [deprivation]. Rather, the purpose of the 45-day limitation is to encourage the opposite—to not wait. Plaintiffs waited years to bring this present action. In addition, both the municipal and private [d]efendants—as well as other unknown residents, landowners, and developers in the Township—relied on the validity of Ordinance 2020-25.

To address counts six through eight, the court conducted a bench trial on November 28, 2023. The Township participated as a party in this trial. After trial, the court issued a December 11 order and corresponding statement of reasons dismissing the remaining counts in plaintiffs' complaint against all parties with prejudice.

Plaintiffs appealed both the dismissal order and the order entering judgment after trial. On appeal, plaintiffs advance two lines of argument.

Concerning the order dismissing counts one through five as time-barred pursuant to Rule 4:69-6(a), plaintiffs claim the court committed reversible error by: rejecting their public interest and constitutional claims argument; declining to enlarge the filing deadline; and by declining to consider plaintiff's complaint as a declaratory judgment action. As to the trial court's order dismissing counts six through eight after trial, plaintiffs contend the court erred when it concluded that the Board's resolution approving the site plan application was not arbitrary, capricious, and unreasonable.

II.

We first consider plaintiffs' challenge to the trial court's dismissal of counts one through five under Rule 4:69-6.

Without citation to any supporting order, plaintiffs first argue that the court erred in finding that their challenge of the adoption of West Windsor's Ordinance 2020-25 was time-barred by Rule 4:69-6(a).[7] Plaintiffs posit three

---

[7] Plaintiffs did not include copies of the orders appealed in their appendix, however defendants did. We also note that plaintiffs, except for their declaratory judgment action, did not tie their arguments to a specific allegation of error in the trial court's decisions. The Township argues that this omission "render[s] the appeal a nullity," violates Rule 2:6-1(a)(1)(C), and, therefore, allows this court to "summarily dismiss the appeal given [p]laintiffs' fundamental breach of required practice." In this instance, we exercise our discretion to decline to dismiss this appeal, as we are "loathe to dismiss an appeal on procedural-deficiency grounds" where we can properly review the

core arguments: (a) their claims involve important matters of public interest and constitutional importance, citing the Township's fair housing obligations and its alleged spot zoning; (b) defendants failed to provide personal notice of the hearings as required by N.J.S.A. 40:55D-62.1; and (c) the trial court failed to consider the matter as a declaratory judgment action. Plaintiffs seek reversal of the trial court's order dismissing counts one through five of the complaint and a remand for more complete discovery and a hearing on the merits.

We consider the relevant standard of review. "An appellate court reviews de novo the trial court's determination of the motion to dismiss under Rule 4:6-2(e)." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl, P.C., 237 N.J. 91, 108 (2019).

> In reviewing a complaint dismissed under Rule 4:6-2(e) our inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint. Rieder v. Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987). However, a reviewing court "searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957). At this preliminary stage of the litigation the Court is not

matter on the merits. In re Zakhari, 330 N.J. Super. 493, 495 (App. Div. 2000).

concerned with the ability of plaintiffs to prove the allegation contained in the complaint. <u>Somers Constr. Co. v. Bd. of Educ.</u>, 198 F. Supp. 732, 734 (D.N.J. 1961). For purposes of analysis plaintiffs are entitled to every reasonable inference of fact. <u>Indep. Dairy Workers Union v. Milk Drivers Loc. 680</u>, 23 N.J. 85, 89 (1956). The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach.

[<u>Printing Mart-Morristown v. Sharp Elecs. Corp.</u>, 116 N.J. 739, 746 (1989) (citations reformatted).][8]

Next, to challenge a municipality's adoption of an ordinance, a complaint in lieu of prerogative writs must be filed on time. <u>Rule</u> 4:69-6(a) requires that "[n]o action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing or relief claimed, except as provided by paragraph (b) of this rule."[9] The "accrual period" under <u>Rule</u> 4:69-6 runs from the date of final publication of the ordinance. <u>In re</u>

---

[8] We note that plaintiffs argue in a single paragraph (point I(e) of their merits brief) that dismissal under <u>Rule</u> 4:6-2(e) was improper because resolution of defendants' motions pursuant to <u>Rule</u> 4:69-6 required the trial court to resolve issues of fact. However, our Supreme Court has considered enlargement under <u>Rule</u> 4:69-6 pursuant to a motion to dismiss, finding no procedural obstacle. <u>See</u> <u>Hopewell Valley Citizens' Grp. v. Berwind Prop. Grp. Dev. Co.</u>, 204 N.J. 569, 583-84 (2011); <u>In re Ordinance 2354-12 of W. Orange v. Twp. of W. Orange</u>, 223 N.J. 589, 594-95 (2015); <u>Willoughby v. Plan. Bd. of Deptford</u>, 306 N.J. Super. 266, 275 (App. Div. 1997) (citing <u>Brunetti v. Borough of New Milford</u>, 68 N.J. 576, 584-85 (1975)).

[9] <u>Rule</u> 4:69-6(b) provides different limitation periods for enumerated types of actions in lieu of prerogative writs, none of which apply here.

Ordinance 2354-12, 223 N.J. at 592. "The right to review a zoning ordinance . . . begins upon publication of a notice after its adoption on second reading." Faulhaber v. Twp. Comm. of Howell, 274 N.J. Super. 83, 90 (Law Div. 1994).

Rule 4:69-6(c) permits enlargement of that limitation under certain conditions: "[t]he court may enlarge the period of time provided in paragraph (a) or (b) of this rule where it is manifest that the interest of justice so requires." The use of the words "may enlarge" indicates a discretionary decision, reviewable by this court for abuse of discretion. Reilly v. Brice, 109 N.J. 555, 560 (1988). "Because of the importance of stability and finality to public actions, courts do not routinely grant an enlargement of time to file an action in lieu of prerogative writs." Tri-State Ship Repair & Dry Dock Co. v. City of Perth Amboy, 349 N.J. Super. 418, 423 (App. Div. 2002). "Whether to grant or deny an enlargement involves a sound exercise of judicial discretion, with consideration given both to the potential impact upon the public body and upon the plaintiff." Id. at 423-24. "The longer a party waits to mount its challenge, the less it may be entitled to an enlargement." Id. at 424. The court "should also consider the length of the delay and the reason proffered for that delay." Ibid. "In general, ignorance of the existence of a cause of action will not prevent the running of a period of limitations except when there has been

concealment." Reilly, 109 N.J. at 559. The record in this matter shows no evidence of concealment.[10]

It is undisputed that the forty-five-day period for commencing an action began when the Township adopted the ordinance on December 14, 2020. Here, plaintiffs filed their action in lieu of prerogative writs over two years after the ordinance was adopted, on December 22, 2022. Our review of the record shows plaintiffs had ample opportunity to challenge the ordinance before December 2022 but have offered no reasonable justification for their delay in filing the complaint. Given the record, a plain reading of Rule 4:69-6(a) reveals that plaintiffs' challenge to the ordinance adoption is time-barred. The sole question is whether there is a proper basis to enlarge the time for filing under subsection (c).

## A.

Looking to Rule 4:69-6(c), plaintiffs argue that public interest warrants relaxation of the forty-five-day rule, contending that "the re-zoning of a property into numerous large warehouses and distribution centers . . . will have a palpable impact on the local community." Plaintiffs also make two

---

[10] Plaintiffs suggest, but do not explicitly state, that the Township's failure to provide personal notice of the public hearing for the ordinance could be considered negligent concealment, however, they offer no facts in the record to support this position. We conclude that this implied argument has no merit.

constitutional arguments.  First, asserting that the Township failed in meeting its affordable housing obligations by adopting the rezoning ordinance to permit the Howard Hughes tract warehouse development.  They also allege that the ordinance itself amounts to unlawful spot zoning.  We are not persuaded.

Our courts have enlarged the forty-five-day time frame, in the interests of justice, in matters involving:   (1) important and novel constitutional questions; (2) informal or ex parte legal determinations by administrative officials; and (3) important public interests requiring adjudication.   In re Ordinance 2354-12, 223 N.J. at 601.   The Supreme Court has identified circumstances which qualify as a public interest, including:

> whether there will be a continuing violation of public rights, Jones v. MacDonald, 33 N.J. 132, 138 (1960) (holding that "each purported exercise of the right of office by one without title to it constitutes a fresh wrong"); whether individual installments or payments are to be made under the challenged contract, Meyers v. Mayor and Council of E. Paterson, 37 N.J. Super. 122, 128 (App. Div. 1955), aff'd, 21 N.J. 357 (1956) (successive payments of salary under illegally created position constitute separate remediable acts); whether the question will have a continuing impact on the parties, Reahl v. Randolph Twp. Mun. Utils. Auth., 163 N.J. Super. 501, 510 (App. Div. 1978), certif. denied, 81 N.J. 45 (1979) (holding power of municipal authority to charge standard annual rate for sewer service was a question of public importance); whether the plaintiffs seek injunctive or other equitable relief in addition to the review of governmental action, Thornton v. Vill. of Ridgewood, 17 N.J. 499, 510

(1955) (holding equitable relief not barred by statute of limitations).

[Reilly, 109 N.J. at 559 (citations reformatted).]

In deciding whether to enlarge the forty-five-day time frame, courts must balance the public interests at stake against the "important policy of repose" inherent in Rule 4:69-6. In re Ordinance 2354-12, 223 N.J. at 601 (citing Borough of Princeton v. Bd. of Chosen Freeholders of Mercer, 169 N.J. 135, 152-53 (2001)).

Plaintiffs, non-parties in the Township's declaratory judgment action or the zoning action, failed to intervene while those actions were pending. We note that the experienced affordable housing judge endorsed the global settlement which approved location of affordable housing at other sites, and approved development of commercial warehouses at the Howard Hughes tract. It follows that plaintiffs lack standing to collaterally attack the outcome of this now settled litigation with an out-of-time challenge to Ordinance 2020-25. We agree with the trial court, which rejected plaintiffs' spot zoning and affordable housing allegations, noting that "[p]laintiffs fail to explain how [the challenged] [o]rdinance concerns affordable housing."

We are also unpersuaded by plaintiffs' allegations of a quid pro quo. A "quid pro quo" is "an action or thing that is exchanged for another action or thing of more or less equal value." Black's Law Dictionary 1506 (12th ed.

2024). We have considered how the concept of quid pro quo works in the municipal land use context:

> [W]e view the critical issue as whether the illegal exaction constitutes a blatant quid pro quo for the approval, either demanded by the municipality and acceded to by the developer or offered by the developer and accepted by the municipality in circumstances in which the exaction is unrelated to any legitimate land use concerns generated by the development application itself and the amount thereof is entirely arbitrary. If that is so, then the transaction may be fairly regarded as an interdicted sale of a municipal approval, subversive of law, anathematic to public policy, and remedial only by vitiation of the approval.
>
> [Twp. of Marlboro v. Plan. Bd. of Holmdel, 279 N.J. Super. 638, 643 (App. Div. 1995).]

On this record, plaintiffs do not clearly identify an unlawful exchange or favor. Rather, they broadly assert that defendants made an agreement to "not provid[e] affordable housing." Plaintiffs do not explain how its complaint to overturn the ordinance is related to the Township's alleged failure to meet its affordable housing obligation. Indeed, the rezoning took place after significant and extended public review and consideration. Based on this record, we discern plaintiffs' accusations to be without evidentiary support. The record clearly shows that Ordinance 2020-25 was the product of a comprehensive reexamination process and settlement efforts ultimately approved by the experienced affordable housing judge.

Plaintiffs argue that this record is like the one in <u>Damurjian v. Bd. of Adj. of Colts Neck</u>, 299 N.J. Super. 84 (App. Div. 1997). After Damurjian's variance application was denied, he filed a complaint in lieu of prerogative writs seeking to declare an enhanced setback provision null and void for failing to advance the stated goals of the MLUL. <u>Id.</u> at 87-88. The Township of Colts Neck (Colts Neck) sought dismissal based on <u>Rule</u> 4:69-6, arguing that the challenge was time-barred since the provision was adopted more than three years prior to the action. <u>Id.</u> at 97. The <u>Damurjian</u> court found that the challenge was timely, "filed within 45 days of the date the Board's ruling under [the ordinance] affecting plaintiff's property," <u>ibid.</u>, and further noting that constitutional challenges can never be time-barred. <u>Id.</u> at 98. The court concluded that the zoning provision was "impermissibly vague and ambiguous," <u>id.</u> at 95, and therefore, "defendant's untimeliness contention [was] clearly without merit." <u>Id.</u> at 99.

To the extent plaintiffs use the delay period in <u>Damurjian</u> to justify an enlargement of time under <u>Rule</u> 4:69-6 on this record, we are unconvinced. This comparison ignores our conclusion that Damurjian timely filed his complaint within forty-five days of the Colt's Neck Board of Adjustment's denial of his variance application. <u>Id.</u> at 98 (citing <u>Rule</u> 4:69-6(a)). Consequently, Damurjian's ensuing three-year delay was of no consequence in

the eventual <u>Rule</u> 4:69 enlargement of time analysis.  In addition, in <u>Damurjian</u> we struck down the offending local ordinance as impermissibly vague, a conclusion on a constitutional question, which also negated any time bar argument.  <u>Id.</u> at 98-99.

This record is different than the one we considered in <u>Damurjian</u>.  Plaintiffs are not specifically affected applicants.  Unlike <u>Damurjian</u>, their property was not re-zoned.  The record shows that their complaint was not filed within "45 days after the accrual of the right to the review, hearing or relief claimed."  <u>R.</u> 4:69-6(a).  Untolled by a variance application, it was filed 700 days late.  While <u>Damurjian</u> supports the principle that an unconstitutional ordinance can be challenged at any time by a supported constitutional question, as we state below, we discern no such question here.

Plaintiffs, two private property owners, arrive much too late in this lengthy and transparent public process to overcome the important public policy of repose inherent in <u>Rule</u> 4:69-6.  <u>In re Ordinance 2354-12</u>, 223 N.J. at 601.  We conclude the trial court did not abuse its discretion in declining to enlarge the filing deadline under the public interest exception pursuant to <u>Rule</u> 4:69-6(c), since plaintiffs failed to make a sufficient showing.

B.

Plaintiffs next contend that N.J.S.A. 40:55D-62.1 requires the Township to provide personal notice of the hearing on a proposed amendment to the zoning ordinance to property owners within 200 feet of the affected property at least ten days prior to the hearing. We disagree, as these arguments miss the mark and start with the presumption that personal notice was required. It was not.

The MLUL requires publication of a notice of adoption of any ordinance. Specifically, N.J.S.A. 40:55D-62.1 provides:

> Notice of a hearing on an amendment to the zoning ordinance proposing a change to the classification or boundaries of a zoning district, <u>exclusive of classification or boundary changes recommended in a periodic general reexamination of the master plan by the planning board pursuant to N.J.S.A. 40:55D-89</u>, shall be given at least 10 days prior to the hearing by the municipal clerk to the owners of all real property as shown on the current tax duplicates, located, in the case of a classification change, within the district and within the State within 200 feet in all directions of the boundaries of the district, and located, in the case of a boundary change, in the State within 200 feet in all directions of the proposed new boundaries of the district which is the subject of the hearing.
>
> [(Emphasis added).]

A-1539-23

Relying on N.J.S.A. 40:55D-62.1, Gallo v. Mayor of Lawrence Twp., 328 N.J. Super. 117, 125 (App. Div. 2000), and the language of Ordinance 2020-25, the trial court stated:

> Here, the challenged ordinance was part of the Master Plan Reexamination. The ordinance explicitly says so and [p]laintiffs advance no colorable allegation otherwise. Therefore, the MLUL did not require that the Township provide individual notice. Moreover, [p]laintiffs had notice of the [o]rdinance through a newspaper publication as well as the Township's affordable housing plan's status and settlement.

In Gallo, the plaintiff property owner appealed a grant of summary judgment, arguing that the municipality failed to provide personal notice to landowners within 200 feet of the proposed zoning amendment that would create a higher density residential zone adjacent to their property. 328 N.J. Super. at 121-22. The plaintiff argued that "because they are entitled to protest a change in zoning they are entitled to [personal] notice." Id. at 123. The court disagreed, stating that "[p]laintiffs' interpretation of the statute fails to reflect the Legislature's distinction between an isolated zoning change and a broad-based review of a municipality's entire zoning scheme." Id. at 124.

The Gallo court explained that a challenge to an amendment of a zoning ordinance is "generally . . . time restricted and may well involve public involvement resulting from the specific notice required by the statutes." Id. at 125. In contrast, review of a municipality's master plan involves "extensive

public review and analysis by consultants and experts, hearings, general public notice, and in most cases, extensive publicity and notoriety."  Ibid.

> As demonstrated here, the very nature of periodic review of a master plan precluded it from remaining a secretive process and outside of public oversight and scrutiny.  Against this not atypical factual backdrop, the Legislature was keenly aware of the distinction between the two separate processes and did not perceive it necessary to require that each property owner affected by a master plan change and zoning change be notified.
>
> [Id. at 126.]

In addition, the court noted that practical considerations forbid personal notice, as the review process is "dynamic," involves "tinkering," and often hundreds of changes.  Ibid.  And indeed, a challenge to the master plan has significant and different consequences:  "The impact of a notice requirement and the filing of a protest are significant because once a protest is lodged, the ordinance in question must be approved by a supermajority—that is, by a vote of four-to-one rather than by a simple majority."  Id. at 123.  Gallo is crystal clear in explaining that individual personal notice is not required when the zoning changes are part of a reexamination of the master plan.

Cotler v. Township of Pilesgrove, 393 N.J. Super. 377, 385 (App. Div. 2007) is also instructive.  Relying on Gallo, the court found:

> [T]he rezoning of plaintiffs' properties was the product of an ongoing planning process that started with the

preparation of the periodic reexamination report and concluded with the adoption of the amended zoning ordinance plaintiffs challenge in this litigation. Therefore, this rezoning was not an "isolated zoning change" affecting only a discrete number of properties, but instead the result of "a broad-based review of a municipality's entire zoning scheme," which could be adopted without the personal notice to affected property owners required by N.J.S.A. 40:55D-62.1 and 63.

[Id. at 385.]

Cotler tells us that individual notice is not required even when the specific zoning amendments were not part of the master plan reexamination report but instead became a part of the "ongoing planning process that started with the preparation of the periodic reexamination report and concluded with the adoption of the amended zoning ordinance." Ibid.

Here, the 2018 REX Report shows that the Howard Hughes tract was being considered for prospective conforming and nonconforming uses in the prior zone, ROM-1, and recommends that the Board should evaluate "within the framework of a master plan land use element to assess its developmental implication on the rest of the community." After seven planning board meetings between October 2018 and December 2019, the Board adopted the new master plan in February 2020. The newly adopted master plan recommended including the Howard Hughes tract in a new zone designated as the PCD. In December 2020, Ordinance 2020-25 carried out the

recommendation. Ordinance 2020-25 makes the connection between the 2020 Land Use Plan and the 2018 REX report. It stated:

> WHEREAS, the Planning Board of West Windsor adopted a Land Use Element of the Master Plan on February 12, 2020 (2020 Land Use Plan Element); and
>
> WHEREAS, the 2020 Land Use Plan Element recommends a Planned Commercial District encompassing lots commonly referred to as the Howard Hughes Tract . . .
>
> WHEREAS the 2020 Land Use Plan Element recommends a variety of research, industrial and commercial lands uses to be permitted in the PCD; and
>
> WHEREAS, the intent of the PCD is to support a wide variety of nonresidential uses to facilitate the redevelopment of the tract, while also ensuring that any such development will be complementary to the surrounding area, protect existing environmental constraints, minimize undue strain on the Township's existing community facilities, and avoid any substantial adverse impacts to the existing traffic and circulation patters of Clarksville Road, Quakerbridge Road, and the US Route 1 corridor.[11]

Considering the detailed record below, the trial court correctly noted: "Here, the challenged ordinance was part of the Master Plan Reexamination. The ordinance explicitly says so and [p]laintiffs advance no colorable

---

[11] "Whereas" clauses reflect an expression of intent of the drafter. Highpoint at Lakewood Condo. Ass'n v. Twp. of Lakewood, 442 N.J. Super. 123, 139 (App. Div. 2015); see also Burnett v. Cnty. of Bergen, 198 N.J. 408, 422 (2009).

allegation otherwise."  We agree, and we find the master plan reexamination exception to N.J.S.A. 40:55D-62.1 applies.  No personal notice was required, and we conclude that the trial court committed no error.

C.

Continuing with their objection to the forty-five-day deadline dismissal, plaintiffs next argue that their claims were cognizable under the Declaratory Judgment Act (DJA), N.J.S.A. 2A:16-50 to -62, and therefore not subject to the forty-five-day filing deadline found in Rule 4:69-6.  We find this argument without merit.

The DJA provides, in relevant part, that "[a] person . . . whose rights, status or other legal relations are affected by a . . . municipal ordinance . . . may have determined any question of construction or validity arising under the . . . ordinance . . . and obtain a declaration of rights, status or other legal relations thereunder."  N.J.S.A. 2A:16-53.  The purpose of the DJA is to "provide 'relief from uncertainty and insecurity with respect to rights, status and other legal relations.'"  In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 275 (2017) (quoting N.J.S.A. 2A:16-51).  "By vesting New Jersey courts with the 'power to declare rights, status and other legal relations, whether or not further relief is or could be claimed,' the DJA provides all individuals . . . with a forum to present bona fide legal issues to the court for resolution."  Ibid.

(citation omitted) (quoting N.J.S.A. 2A:16-52). "The primary goal of affording this equitable relief is to allow interested parties to preserve the status quo without having to undergo costly and burdensome proceedings." Ibid. (citing DiFrancisco v. Chubb Ins. Co., 283 N.J. Super. 601, 613 (App. Div. 1995)).

As a threshold matter, a plaintiff seeking relief under the DJA must "present[] a justiciable issue and [have] appropriate standing." ML Plainsboro Ltd. P'ship v. Twp. of Plainsboro, 316 N.J. Super. 200, 204 (App. Div. 1998). A plaintiff may assert a declaratory judgment action when challenging an ordinance on constitutional grounds. Bell v. Twp. of Stafford, 110 N.J. 384, 390 (1988). However, we may decline to order declaratory relief if alternative relief would be more effective or appropriate, a decision that rests within the court's sound discretion. ML Plainsboro, 316 N.J. Super. at 204-05.

To have standing to challenge a municipal ordinance under the DJA, a person's "rights, status or other legal relations" must be affected by the ordinance. N.J.S.A. 2A:16-53. Courts "will render declaratory relief when there is an actual dispute between parties who have a sufficient stake in the outcome." N.J. Ass'n for Retarded Citizens v. Dep't of Hum. Servs., 89 N.J. 234, 241 (1982); Indep. Realty Co. v. Twp. of N. Bergen, 376 N.J. Super. 295, 301-03 (App. Div. 2005). Complaints challenging the constitutionality of

municipal ordinances can be maintained as a declaratory judgment action or an action in lieu of prerogative writs.  Ballantyne House Assocs. v. City of Newark, 269 N.J. Super. 322, 330 (App. Div. 1993).

Here, plaintiffs chose to file an action in lieu of prerogative writs, not a DJA action.  The trial court recognized this, stating, "[p]laintiffs have not brought a declaratory judgment action here so the concern regarding whether a declaratory judgment action can circumvent the 45-day limit is of no moment."

We recognize that the DJA does not have a statute of limitations, and the defense of laches is ordinarily inapplicable.  Ibid.  Thus, we understand plaintiffs' reliance on the application of those principles here.

We consider the facts which gave rise to a challenge to the constitutional rights in Ballantyne.  The Ballantyne plaintiffs had standing because their rights were directly affected by the challenged ordinance.  Id. at 330-331. They challenged a municipal ordinance which authorized termination of garbage collection at plaintiffs' housing complex.  They alleged that the ordinance breached a pre-existing tax abatement agreement between them and the City of Newark.  Ibid.  Because Ballantyne was a contract claim, we declined to consider plaintiffs' equal protection argument, since declaring the ordinance unconstitutional "would not entitle plaintiffs to any additional relief

A-1539-23

beyond what they are already entitled to receive based on Newark's breach of the tax abatement agreements." Id. at 337.

Here, plaintiffs' complaint presents no justiciable issue, nor do plaintiffs establish standing to challenge the ordinance. Plaintiffs have been unable to demonstrate how their constitutional rights have been impacted or violated. The record shows plaintiffs' residential properties are located adjacent to the Howard Hughes tract, outside of the PCD zone created by the ordinance. Absent a bona fide controversy, plaintiffs are not entitled to declaratory relief. See Cox et al., New Jersey Zoning & Land Use Administration, § 40-5, at 837 (2024). If plaintiffs' rights are not directly affected by the Township's adoption of the ordinance, then none of their claims are cognizable under the DJA and they lack standing.

Having concluded that none of the Rule 4:6-2(c) grounds argued by plaintiff for the enlargement of time apply, we affirm the court's dismissal with prejudice of counts one through five.

## III.

We next consider plaintiffs' challenge to the trial court's dismissal of counts six through eight after trial. Inexplicably, plaintiffs appeal the Board's

actions only. They omit any reference to the trial court's findings and conclusions in support of its dismissal order.[12]

Plaintiffs first argue that the Board's approval of Bridge Point's application (including site plan approval, subdivision approval and waivers) was not supported by the evidence, and thus its decision was arbitrary, capricious and unreasonable, likening it to a "net opinion." Next, plaintiffs contend that Bridge Point failed to seek all the required variances necessary to complete the project as proposed. Finally, plaintiffs argue that the Township failed to provide adequate public notice in accordance with N.J.S.A. 40:55D-11 to -15, depriving the Board of proper jurisdiction to hear the application.

We consider the well-settled law concerning challenges to municipal action.

"[W]hen reviewing the decision of a trial court that has reviewed municipal action, [we] are bound by the same standards as was the trial court." Berardo v. City of Jersey City, 476 N.J. Super. 341, 353 (App. Div. 2023)

---

[12] The Township "urge[s] this court to summarily dismiss the appeal given [p]laintiffs' fundamental breach of required practice," arguing plaintiffs' failure to include the trial court's order and forty-three-page statement of reasons in the appendix violates Rule 2:6-1(a)(1)(C) and is fatal. We may decline to address an issue on appeal where the appellant has failed to include the final order dismissing the claim in their appendix. Cipala v. Lincoln Tech. Inst.,179 N.J. 45, 55 (2004). We choose to address this aspect of the appeal on the merits, as defendants included the operative orders in their appendix, and the record is intact for purposes of review.

(first alteration in original) (quoting Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)).

> Ordinarily, when a party challenges a zoning board's decision through an action in lieu of prerogative writs, the zoning board's decision is entitled to deference. Its factual determinations are presumed to be valid and its decision to grant or deny relief is only overturned if it is arbitrary, capricious or unreasonable.
>
> [Kane Props., LLC v. City of Hoboken, 214 N.J. 199, 229 (2013) (citing Burbridge v. Twp. of Mine Hill, 117 N.J. 376, 385 (1990); Kramer v. Bd. of Adj., 45 N.J. 268, 298 (1965)).]

As such, "[t]he challenger of municipal action bears the 'heavy burden' of overcoming this presumption of validity by showing that it is arbitrary, capricious or unreasonable." Vineland Constr. Co. v. Twp. of Pennsauken, 395 N.J. Super. 230, 256 (App. Div. 2007) (quoting Bryant v. City of Atlantic City, 309 N.J. Super. 596, 610 (App. Div. 1998)). "The factual determinations of the planning board are presumed to be valid and the exercise of its discretionary authority based on such determinations will not be overturned unless arbitrary, capricious or unreasonable." Fallone Props., 369 N.J. Super. at 560.

"[A] court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172

N.J. 75, 81 (2002)). Because local officials are presumed to have a clearer understanding of the "characteristics and interests" of the community, "the law presumes that boards of adjustment and municipal governing bodies will act fairly and with proper motives and for valid reasons." Kramer, 45 N.J. at 296; see also Fallone Props., 369 N.J. Super. at 561. "[T]he record made before the Board is the record upon which the correctness of the Board's action must be determined . . . ." Kramer, 45 N.J. at 289 (citing Kempner v. Twp. of Edison, 54 N.J. Super. 408, 416 (App. Div. 1959)). Furthermore, "[t]he factual findings set forth in a resolution cannot consist of a mere recital of testimony or conclusory statements couched in statutory language." N.Y. SMSA, L.P. v. Bd. of Adj., 370 N.J. Super. 319, 332-33 (App. Div. 2004).

However, we must overturn board decisions that are "arbitrary, capricious or unreasonable," Cell S. of N.J., 172 N.J. at 81 (quoting Medici v. BPR Co., 107 N.J. 1, 15 (1987)), and we note that "'a board's decision regarding a question of law . . . is subject to a de novo review by the courts, and is entitled to no deference . . . .'" Berardo, 476 N.J. Super. at 353 (quoting Dunbar Homes, Inc. v. Zoning Bd. of Adj., 233 N.J. 546, 559 (2018)); Nuckel v. Borough of Little Ferry Plan. Bd., 208 N.J. 95, 102 (2011).

Plaintiffs have the burden to show that the Board "engaged in 'willful and unreasoning action, without consideration and in disregard of

circumstances.'" Northgate Condo. Ass'n v. Borough of Hillsdale Plan. Bd., 214 N.J. 120, 145 (2013) (quoting Worthington v. Fauver, 88 N.J. 183, 204-05 (1982)). They make three main arguments to show the Board's approval of Bridge Point's application was arbitrary and capricious. First, the Board's approval was erroneously based upon experts who presented "net opinions." Second, the Board's approval was improper because it had insufficient evidence on air quality, traffic, and noise questions, and granted certain waivers without the requisite hardship showing. Third, plaintiffs submit that the Board "failed to compare the project's phasing to the requirements of the Township Code or the MLUL" when granting a ten-year vesting period for approval of phase I and preliminary approval of phase II. We consider each claim in turn.

A.

"The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Townsend v. Pierre, 221 N.J. 36, 53-54 (2015) (alteration in original) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)). An opinion that is "circular," or contains "bare conclusions, unsupported by factual evidence, is inadmissible." Buckelew v. Grossbard, 87 N.J. 512, 524 (1981). However, our Rules of Evidence do not apply to

planning board hearings. N.J.S.A. 40:55D-10(e) (stating that "[t]echnical rules of evidence shall not be applicable to the hearing" of a municipal land use agency). Planning board proceedings are quasi-judicial in function. Baghdikian v. Bd. of Adj., 247 N.J. Super. 45, 48-49 (App. Div. 1991).

"A board's function is to make factual determinations based on the record and decide whether the applicant has satisfied the statutory criteria . . . its power includes the 'judicial' role of deciding questions of credibility and whether to accept or reject testimony, expert or otherwise." Id. at 49. In New Brunswick Cellular Tel. Co. v. Borough of S. Plainfield Bd. of Adj., 160 N.J. 1, 16 (1999), the Court overturned a municipal board decision that relied on an expert's statements that were "tantamount to a net opinion." The Court held that a board cannot rely upon unsubstantiated allegations or expert opinions that are unsupported by studies or data when rendering its decisions. Ibid.; see Cell S. of N.J., 172 N.J. at 89.

Our review requires us to determine whether the expert testimony was helpful to the factfinder and sufficiently supported by data. Townsend, 221 N.J. at 55. The record shows that Bridge Point laid the proper foundation at the planning board hearing, permitting each witness to state their qualifications. In every case, the Board accepted each witness as an expert

without objection, and without competing proof from anyone, including plaintiffs.

The trial court noted the Board's eighty-three-page "exhaustive and comprehensive [r]esolution," finding that "[e]ach of the expert witnesses offered their opinions concerning their area of expertise and each provided the facts, measures, and methods underlying their opinion." The Board's determinations about the waivers are each explained, with citation to the appropriate witnesses and portions of the record upon which the Board relied. No competing experts were offered by plaintiffs or any other member of the public, and the Board accepted the testimony of each witness presented without objection.

The record shows that the Board concluded: "For the reasons set forth below, and on the basis of the testimony and submissions provided by the [a]pplicant and municipal staff, the Board finds that the merits of this application justify approval and outweigh the concerns, which are mitigated by the conditions of this approval."

We conclude that the trial court made sufficient findings, well-established in the voluminous and detailed record of the Board, to support its conclusion that the Board was not arbitrary and capricious. On this record, we discern no error by the trial court when it considered expert testimony and

concluded that it was helpful to the factfinder and sufficiently supported by data contained in the record.

B.

Next, plaintiffs argue that "the Board failed to properly analyze the proposed increase in vehicular and tractor trailer traffic and impact of same on the surrounding neighborhood," rendering its approval of Bridge Point's site plan and subdivision plan arbitrary and capricious.

The record shows that the Board aptly summarized the expert testimony from the uncontroverted witnesses, including questions from the Board and the public, in a comprehensive eighteen paragraph resolution. The detailed record also reflects the Board's deliberate consideration of vehicular traffic impacts on the community. It acknowledged in its resolution that "the greatest concern with this application for the Board and also the public was the projected increase in truck traffic that will result from the warehouse development." In response to this concern, the Board stated that it "gave considerable thought to ways in which the impact of truck traffic generated by the project could be mitigated" and imposed several conditions in granting the waiver relief.

The trial court found Bridge Point's traffic consultant, Karl Pehnke offered uncontroverted testimony which was corroborated by the Board's

traffic expert.  The trial court properly deferred to the Board's well-supported

decision, stating:

> Ample expert and factual testimony supported the Applicant's requests, and the Board provided detailed reasons for granting the waver [sic] relief.  The Board discusses the bases for each waiver as it recites the testimony of the different experts.  Bridge provided expert testimony in favor of each design and submission waiver; no member of the public objected to the waivers; and no expert testified against the waivers.  The Township's own experts commented on the waivers.  Neither the Township planner or [sic] Township engineer objected to the waivers concerning parking spaces, loading spaces, or signage.  The Township engineer did not object to the lighting plan and checklist waivers.  The Township landscape architect testified that he supported the stormwater basin design waiver and the two landscaping waivers.  The Board's resolution detailed all of the testimonies and explained the rationale behind each waiver relief it granted, whether that be, for instance, parking and loading spaces (e.g., parking and loading spaces appropriate for the scale of the project), lighting (e.g., improved site safety), or storm water management (e.g., blending with landscape, respecting natural drainage features of the property).  In each instance, the Board's decision was based upon credible, reasoned, factually supported, and largely uncontradicted expert testimony.  Based on this evidence, the Court finds that the Board's decisions with respect to the waiver requests were not arbitrary, capricious, unreasonable, or contrary to law.

The trial court correctly determined that the Board's actions were not

arbitrary, capricious, or unreasonable, as it systematically addressed every

requested waiver, supported each decision by expert testimony and other

evidence, and approved the waivers consistent with the broad discretion granted to it. The record shows the trial court found the Board adequately stated why each waiver should be granted under the statutory criteria and in consideration of the goals of the ordinance. The Board found either undue hardship or impracticability in each instance, and that each waiver request that was approved was reasonable and within the general intent of the ordinance.

On this record, we discern no error by the trial court when it considered the impact of vehicular traffic and concluded the Board's waiver approvals were not arbitrary and capricious.

C.

Plaintiffs next argue that the Board failed to produce any testimony demonstrating how Bridge Point "met this 'threshold for granting extended vesting', nor what said threshold is, or where said threshold can be found." Plaintiffs offer no further explanation for objecting to the extension.

The record shows that when the Board granted the extension, it found that "[t]he Applicant requested 10-year vesting of the final approval of Phase 1 and preliminary approval of Phase 2, which is reasonable and appropriate given the size of the project, which will take time to complete." In support of its finding that the Board acted reasonably, the court noted the Board's statement emphasizing the size and intensity of the project: "Elsewhere, the

Board had noted that '[i]t is not often that a board considers an application for land use development of the scale and involving the complexity of issues presented here,' referencing 'the sheer size of the project' presenting 'profound local and regional implications that the Board had to consider.'"

N.J.S.A. 40:55D-49 provides that preliminary approval of a major subdivision or a site plan expires three years "from the date on which the resolution of preliminary approval is adopted" unless otherwise extended by the planning board pursuant to N.J.S.A. 40:55D-49(d). The planning board is permitted to grant an extension upon a finding of reasonableness. Ibid.

Here, the record shows that expert witnesses testified to the need for New Jersey Department of Transportation approval, which they opined could take years. The experts also testified to the sheer size and complexity of the project, which will require numerous additional approvals before completion. The Board based its decision on the detailed record and the trial court, again, properly deferred to the Board's findings and decision. We see no reason to disturb the trial court's order on question of Bridge Point's vested rights.

D.

We briefly consider two other arguments made by plaintiffs, neither of which are persuasive.

A-1539-23

Plaintiffs argue that "[t]he Board's approval of the [a]pplication must be vacated as [Bridge Point] failed to seek and obtain all variance relief required," namely a d(1) use variance "to construct over 5,500,000 square feet of warehouse space within the PCD Zone, a single use that was presumably not the intended purpose of Ordinance 2020-25." We are unpersuaded.

The Board unequivocally found that no variance relief was required. The Board relied on the testimony from a project planner John McDonough, who identified many "positives" in the application. The Board noted:

> Mr. McDonough stated that there are "many positives" of this application: the fact that it is a variance free application and one that conforms to the Planned Commercial District requirements; its full compliance with use and all bulk standards, including lot and yard dimensions, area, frontage, width and depth, coverage and height; its relatively modest impact by comparison to the potential residential development once contemplated for the Site, and the economic value of the proposed use, reflecting New Jersey's "excellent transportation system," access to major metropolitan areas (New York and Philadelphia) and to ports, and the significant increase in container activity, which began pre-COVID and has only increased with the increased ease of online shopping. The application, according to Mr. McDonough, meets the "intent of the zone," and bulk requirements, requiring only "relatively modest" relief from the design standards. The Board Planner generally agreed with Mr. McDonough's testimony.

"The established rules of statutory construction govern the interpretation of a municipal ordinance." State v. Williams, 467 N.J. Super. 1, 4 (App. Div. 2021) (quoting Twp. of Pennsauken v. Schad, 160 N.J. 156, 170 (1999)). "The first step of statutory construction requires an examination of the language of the ordinance. The meaning derived from that language controls if it is clear and unambiguous." Ibid. "[W]ords and phrases shall be given their generally accepted meaning, unless that meaning is inconsistent with the clear intent of the Legislature or unless the statute provides a different meaning. Words in a statute should not be read in isolation." Keyworth v. CareOne at Madison Ave., 258 N.J. 359, 379-80 (2024) (quoting Shelton v. Restaurant.com, Inc., 214 N.J. 419, 440 (2013)).

Here, the subject ordinance provides the following in pertinent part: "Permitted uses. In the PCD, no building or premises shall be used and no building shall be erected or altered which is arranged, intended, or designed to be used except for one or more of the following uses . . . ." There are forty-two permitted uses, eleven accessory uses, and two conditional uses. Of the forty-two permitted uses, use number five permits "[w]arehousing and distribution facilities." Further, the ordinance indicates that the "intent of the PCD" includes encouraging warehouse and distribution centers.

A-1539-23

Plaintiffs do not support their argument that a single use, i.e. a 5,500,000 square-foot warehouse project, in the PCD zone was not an intended purpose of the ordinance. And as the trial court pointed out, "whether a single use is or is not permitted is irrelevant in the instant case, as [p]laintiffs acknowledge in their brief, over 100 plus acres of the PCD are reserved for other uses." We find plaintiff's argument without merit. The ordinance language is clear on its face, and we find no error here.

ii.

Plaintiffs also argue that Bridge Point's notice of the May 11, 2022 hearing was "materially deficient in many respects and fell far short of compliance with the MLUL's public notice requirements" by failing to describe the variance relief requested and by failing to provide information relating to the availability of documents for inspection. Plaintiffs continue that this defective notice divests the Board of jurisdiction, and therefore the court was without jurisdiction to dismiss their complaint. We disagree.

Notice is jurisdictional. Perlmart of Lacey, Inc. v. Lacey Twp. Plan. Bd., 295 N.J. Super. 234, 237 (App. Div. 1996). Pursuant to N.J.S.A. 40:55D-12, an applicant is required to give public notice of the hearing on an application at least ten days prior to the date of the hearing. N.J.S.A. 40:55D-11 governs the contents of that notice, requiring that it shall state "the date,

time and place of the hearing, the nature of the matters to be considered and, . . . the location and times at which any maps and documents for which approval is sought are available."  Production of "[a]ny maps and documents for which approval is sought at a hearing shall be on file and available for public inspection at least 10 days before the date of the hearing, during normal business hours in the office of the administrative officer."  N.J.S.A. 40:55D-10(b).

The purpose of the notice requirement is functional, not cemented in form.  As the panel explained in Perlmart:

> It is, to us, plain that the purpose for notifying the public of the "nature of the matters to be considered" is to ensure that members of the general public who may be affected by the nature and character of the proposed development are fairly apprised thereof so that they may make an informed determination as to whether they should participate in the hearing or, at the least, look more closely at the plans and other documents on file.
>
> [295 N.J. Super. at 237-38 (citations omitted).]

"[S]uch a notice should fairly be given the meaning it would reflect upon the mind of the ordinary layman, and not as it would be construed by one familiar with the technicalities solely applicable to the laws and rules of the zoning commission."  Id. at 238 (quoting Holly Dev., Inc. v. Bd. of Cnty. Comm'rs, 342 P.2d 1032, 1036 (Colo. 1959)).

A-1539-23

The record shows notice was proper because Bridge Point: did not apply for variance relief, as none was required; provided two separate methods to access their application materials; and gave effective notice where the record shows fifty members of the public attended the meeting, with some of those (including Fox) sharing public comment.

We conclude without reservation that the trial court's dismissal orders were proper. To the extent that we have not addressed any other arguments by plaintiffs, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division